In the Matter of DEPARTMENT OF ENVIRONMENTAL PROTECTION OF THE CITY OF NEW YORK, Petitioner, and ENVIRONMENTAL DEFENSE FUND, INC., Intervenor-Petitioner, v DEPARTMENT OF ENVIRONMENTAL CONSERVATION OF THE STATE OF NEW YORK et al., Respondents, and CENTRAL HUDSON GAS & ELECTRIC CORPORATION, INC., et al., Intervenors-Respondents.

Third Department, November 13, 1986

## APPEARANCES OF COUNSEL

*Frederick A. O. Schwarz, Jr., Corporation Counsel (Nicole A. Gordon* of counsel), *Richard Bowers* and *Ross Friedman* for petitioner.

*Robert Abrams, Attorney-General (Douglas H. Ward, Peter H. Schiff* and *Lawrence A. Rappoport* of counsel), for respondents.

*Michael Herz (James T. B. Tripp* of counsel), for intervenor-petitioner.

*Whiteman, Osterman & Hanna (Philip H. Gitlen* and *Philip H. Dixon* of counsel), and *Gould & Wilkie (Davison W. Grant* of counsel), for Central Hudson Gas & Electric Corporation, intervenor-respondent.

*Michael A. Wilcken* and *Garrett E. Austin* for Consolidated Edison Company of New York, Inc., intervenor-respondent.

**OPINION OF THE COURT**

MAHONEY, P. J.

Central Hudson Gas & Electric Corporation, Inc. (Central Hudson) owns and operates the Danskammer steam electric generating plant and, along with Consolidated Edison Company of New York, Inc., owns and operates the Roseton steam electric generating facility. The facilities are situated in close proximity to each other in Orange County. In 1983, Central Hudson decided to convert units 3 and 4 of Danskammer from oil to coal. While all parties agreed this would be a prudent course of action, one consequence would be the increased utilization of Danskammer, which would result in higher emissions of pollutants sulfur dioxide and nitrogen oxides. Central Hudson filed an application and draft environmental impact statement with the Department of Environmental Conservation (DEC) seeking to modify its air quality certificate to convert the units involved from 1.0% sulfur content oil to 0.7% (maximum) sulfur content coal[1] and to increase the stack height at Roseton. Under the proposal, 2.0% sulfur content oil would continue to be burned at Roseton. DEC determined that the proposal would have a significant impact on the environment, thus requiring review under the State Environmental Quality Review Act (SEQRA) (ECL art 8). A public hearing was scheduled.

Subsequently, it was learned that three "exceedances" of the National Ambient Air Quality Standard for sulfur dioxide had been measured at Roseton during the period October to December 1983. As a result, DEC notified Central Hudson of its belief that 1.5% sulfur content oil[2] would have to be used at Roseton to assure continued compliance with the Federal statute.

After an extensive hearing at which a number of interested parties appeared, a report and final environmental impact statement was submitted by the Administrative Law Judge (ALJ). The Commissioner of DEC then issued his decision, which essentially adopted the report of the ALJ. Central Hudson was granted permission to convert from oil to 0.7% sulfur content coal at two units of Danskammer and was

---

1. The record indicates that the sulfur dioxide emissions from the burning of 1.0% sulfur content oil and 0.7% sulfur content coal are approximately equal.

2. It is more expensive for a utility to burn lower sulfur content oil.

required to change from 2.0% to 1.5% sulfur content oil at Roseton.

The Department of Environmental Protection of the City of New York, whose water supply is affected by acid deposition from Danskammer and Roseton, commenced this CPLR article 78 proceeding challenging the Commissioner's decision. Environmental Defense Fund, Inc., was granted permission to intervene as a petitioner also challenging the Commissioner's decision. The two utilities have intervened as respondents in support of the Commissioner's decision. Special Term transferred the proceeding to this court.

■ Initially, we point out that the proceeding was improperly transferred to this court. Where an administrative agency takes action as a result of an adjudicatory hearing, judicial review is sought by way of a CPLR article 78 proceeding in the nature of certiorari (CPLR 7803 [4]). If the agency's findings of fact are challenged, the standard of review is the familiar substantial evidence test, and, where that issue is raised, the proceeding must be transferred to this court (CPLR 7804 [g]). However, where agency action is taken without a hearing, or where the hearing is discretionary or informational as opposed to adjudicatory and evidentiary, judicial review is sought by way of a CPLR article 78 proceeding in the nature of mandamus to review (CPLR 7803 [3]). In such case, the standard of review is whether the agency's action had a rational basis and, thus, was not arbitrary or capricious. As a result, the substantial evidence test is not at issue and transfer to this court is not authorized (*Matter of Incorporated Vil. of Val. Stream v State of New York Public Serv. Commn.,* 107 AD2d 856, 857; *Matter of Save the Pine Bush v Planning Bd.,* 83 AD2d 741, 741-742). In this case, the hearing conducted was not adjudicatory or quasi-judicial, but was informational *(see, e.g., Matter of Save the Pine Bush v Planning Bd., supra).* Thus, transfer to this court was inappropriate. However, in the interest of conservation of judicial resources, we choose to entertain the proceeding *(see,* CPLR 7804 [g]; *Matter of Incorporated Vil. of Val. Stream v State of New York Public Serv. Commn., supra).*

Turning to the merits, the record is clear that the conversion sought by Central Hudson would result in increased emissions of sulfur dioxide and nitrogen oxides from Danskammer/Roseton. A number of proposals were submitted at the hearing. The utilities abandoned the original request to simply convert from oil to coal at two units of Danskammer in

light of the violations of the Federal statute and agreed to change to 1.5% sulfur content oil at Roseton. Opponents, including DEC staff, took the position that the change from 2.0% to 1.5% sulfur content oil would simply assure compliance with the Federal statute and would in no way offset the increased pollution caused by the conversion. Accordingly, DEC staff advocated a reduction to 1.4% sulfur content oil at Roseton along with the conversion at Danskammer while several intervenors were in favor of a reduction to 1.0% sulfur content oil at Roseton along with the conversion at Danskammer. The Commissioner selected the option proposed by the utilities.

■ Petitioners take the position that, since the change to 1.5% sulfur content oil at Roseton is necessary to bring the plant into compliance with the Federal statute, for all practical purposes, nothing was done to offset the increased pollution to be caused by the conversion at Danskammer. We agree. The ALJ concluded that: "[Central Hudson's] preferred 1.5% sulfur content oil for Roseton would assure that this facility would meet the currently mandated Federal and State standards for air quality, but no special attention would be given to mitigating acid deposition." Such decision was adopted by the Commissioner. The Commissioner concluded that the conversion proposed by Central Hudson would result in increased emissions, and he sought to rectify such situation as a condition to the conversion. That being the case, the decision to allow the burning of 1.5% sulfur content oil at Roseton, which would simply assure compliance with the Federal statute and would not mitigate the effect of the conversion at Danskammer, was without a rational basis. The Commissioner's decision notes that the proposal which he approved will result in a net 14% decrease in sulfur dioxide emissions from Danskammer/Roseton.[3] However, as petitioners point out, that net decrease is due to the reduction necessary to comply with the Federal statute. In effect, the utilities are being given "credit" for coming into compliance with the Federal statute. We note that DEC staff took all of these factors into account when it recommended that 1.4% sulfur content oil be burned at Roseton as a condition for the conversion at Danskammer.

---

**3.** The record indicates that Roseton has the highest sulfur emissions of any Hudson Valley source and 1980 data indicates that it is the fourth largest sulfur dioxide source in the State.

Since the Commissioner's decision was not founded on a rational basis, it must be annulled.

KANE, CASEY, WEISS and LEVINE, JJ., concur.

Petition granted, without costs, to the extent that the determination of respondent Commissioner of Environmental Conservation is annulled.