OPINION OF THE COURT
Per Curiam.
The City of New York moved in this court to hold Central Hudson Gas and Electric Corporation and two of its officers in criminal and civil contempt for willful disobedience of a partial stay order issued by a Judge of this court in connection with a contemporaneously pending motion for leave to appeal. The motion is granted only to the extent of holding Central Hudson in criminal contempt.
Central Hudson owns and operates the Danskammer generating plant and, together with Consolidated Edison, owns and operates the Roseton generating facility. Both facilities are located in Orange County. In 1983, Central Hudson wished to convert Units 3 and 4 of its Danskammer facility from oil to coal firing. It filed an application and draft environmental impact statement with the State Department of Environmental Conservation (D.E.C.) seeking to modify its air quality certificate and to gain approval for the conversion plan. On June 19, 1985, the State Commissioner approved the conversion plan on condition that lower sulfur content oil be used at the nearby Roseton facility.
The Department of Environmental Protection of the City of New York (the City), whose water supply is affected by acid deposition from the Danskammer and Roseton facilities, started a proceeding to annul the State Commissioner’s determination. The Environmental Defense Fund, Inc. (E.D.F.) intervened and joined the City, and Central Hudson and ConEd intervened and joined the State. On transfer to the Appellate Division, the State Commissioner’s determination was unanimously annulled on November 13, 1986 (120 AD2d 166).
*237 Shortly after the Appellate Division’s decision was made but before an order was entered, the parties engaged in settlement negotiations and the prevailing City and E.D.F. continued to forego submission of an order for entry by that court while settlement negotiations were pursued. In early April, the City learned that the State D.E.C. had, without notice to parties, issued a "Certificate of Operation” dated February 27, 1987 which authorized the burning of coal at Danskammer, and that Central Hudson had been burning coal pursuant to this certificate since March. By its own terms, this "Certificate to Operate” was predicated on the Commissioner’s determination of June 19, 1985, despite the annulment of that determination by the Appellate Division (120 AD2d 166, supra).
The City then quickly proposed an order to effectuate the Appellate Division’s decision. The order was entered by that court on April 7, 1987 and it formally nullified the express predicate for the February "Certificate of Operation”. The Attorney-General on behalf of D.E.C. submitted an affidavit of intention to move for leave to appeal, triggering an automatic stay pursuant to CPLR 5519 (a) (1), a provision designed for the benefit of State and municipal litigants, which also inured to the benefit of the private litigant Central Hudson.
On April 8, 1987, the City presented an order to show cause to a Judge of this court, seeking to vacate the automatic stay. On the same day Central Hudson, represented by the law firm of Whiteman, Osterman and Hanna, moved in opposition to the vacatur and presented its own order to show cause for an independent interim stay of enforcement of the Appellate Division order pursuant to CPLR 5519 (c).
On April 9, 1987, the Judge to whom the proposed orders were presented convened a hearing, with counsel for all parties participating. On April 10, 1987, the Judge issued an order vacating the automatic stay; he simultaneously rejected the Central Hudson order to show cause and, instead, prepared and signed an order to show cause granting only partial stay relief to Central Hudson. This order contained the following provision: "ordered that, pending determination by this Court of the motions for said stay, for vacatur of CPLR 5519 (a) (1) stay vacated by separate order to show cause signed simultaneously herewith, and for leave to appeal by respondents and intervenors-respondents, said intervenors-respondents are granted a stay of the Appellate Division order to the extent only that they may continue plant conversion construe *238 tion pursuant to the original license issued by the Department of Environmental Conservation, noting especially that this interim partial stay pending the disposition of all motions in this Court shall not authorize the actual burning of coal fuel pursuant to licenses or authorizations rendered subsequent to the Appellate Division’s annulment of the determination affecting the original license” (emphasis added).
On April 14, 1987, Philip Gitlen, an attorney with the firm representing Central Hudson, informed the Assistant Attorney-General and the Assistant Corporation Counsel that he did not interpret the partial stay order as prohibiting the burning of coal at Danskammer, that he so informed his client, and that Central Hudson was continuing to burn coal. To support this interpretation, Mr. Gitlen alluded to and gave critical weight to questions and comments made during the in-chambers hearing of April 9, 1987. In a letter dated April 16, 1987, the Assistant Attorney-General, Central Hudson’s own corespondent in this matter, advised Mr. Gitlen that he disagreed with Mr. Gitlen’s interpretation since, in his view, the order by its own terms clearly prohibited the continued burning of coal at Danskammer. The Assistant Attorney-General urged Central Hudson, in writing, to cease burning coal immediately.
The City, in turn, responded to these events by making an additional motion seeking: (1) to hold Central Hudson and two of its officers in civil and criminal contempt of an order of this court; (2) the imposition of a fine of $1.6 million plus $1.6 million per month for each month Central Hudson failed to comply with the partial stay order; and (3) weekly verification that Central Hudson was not burning coal at the Danskammer plant.
On April 23, 1987, this court denied the predicate motions for leave to appeal and dismissed the stay motions as academic (69 NY2d 921), rendering the Appellate Division decision final. This court also concluded that the City’s allegations of contemptuous conduct were sufficient to require independent factual inquiry and ordered the parties to present evidence at a hearing before the Honorable Joseph F. Gagliardi, Justice of the Supreme Court and Administrative Judge of the Ninth Judicial District.
Shortly after this facet of the matter was referred to Justice Gagliardi for hearing and report, the parties settled all remaining aspects of the underlying proceeding pertaining to *239 the merits of the controversy. They also attempted to settle the contempt component by withdrawal of the motion and by termination of the reference. We directed that the reference be completed so that a full record could be developed as to whether withdrawal was warranted.
Justice Gagliardi’s comprehensive report contained two findings and a comment on the fine to be imposed in the event that a finding of criminal contempt was made. The first finding was that Central Hudson, as represented by its attorneys, "was not acting upon a good faith interpretation of the partial stay order when it continued to burn coal at Danskammer Unit 4 from April 10 through April 26, 1987”. The second finding was that "[t]he City did not suffer any damages as a result of the continued coal burning at Danskammer Unit 4 from April 10 through April 26, 1987”. Finally, Justice Gagliardi appropriately left to this court the issue of the fine amount in the event we found Central Hudson’s conduct to be a criminal contempt. We confirm the findings and conclude that Central Hudson willfully disobeyed a lawful order of this court. Consequently, it must be held in criminal contempt and the fine is fixed in the amount of $250, the maximum permitted by law (Judiciary Law § 751 [1]).
This court’s power to punish for civil and criminal contempt is found respectively in Judiciary Law § 753 (A) (3) and § 750 (A) (3). Although the same act may be punishable as both a civil and a criminal contempt, the two types of contempt serve separate and distinct purposes. A civil contempt is one where the rights of an individual have been harmed by the contemnor’s failure to obey a court order (People ex rel. Munsell v Court of Oyer & Terminer, 101 NY 245). Any penalty imposed is designed not to punish but, rather, to compensate the injured private party or to coerce compliance with the court’s mandate or both (State of New York v Unique Ideas, 44 NY2d 345). A criminal contempt, on the other hand, involves an offense against judicial authority and is utilized to protect the integrity of the judicial process and to compel respect for its mandates (King v Barnes, 113 NY 476). Unlike civil contempt, the aim in a criminal contempt proceeding is solely to punish the contemnor for disobeying a court order, the penalty imposed being punitive rather than compensatory (State of New York v Unique Ideas, 44 NY2d 345, supra).
In keeping with a civil contempt’s distinct purpose, it must be established that the rights of a party to the litigation have *240 been prejudiced (Judiciary Law § 753 [A]; Matter of McCormick v Axelrod, 59 NY2d 574). In a criminal contempt proceeding, no such showing is needed since the right of the private parties to the litigation is not the controlling factor. A key distinguishing element between civil and criminal contempt is the degree of willfulness of the subject conduct. To be found guilty of criminal contempt, the contemnor usually must be shown to have violated the order with a higher degree of willfulness than is required in a civil contempt proceeding (supra, at 583).
Despite these distinctions, the two categories of contempt share some common elements. To sustain a finding of either civil or criminal contempt based on an alleged violation of a court order it is necessary to establish that a lawful order of the court clearly expressing an unequivocal mandate was in effect (supra, at 583). It must also appear with reasonable certainty that the order has been disobeyed (Pereira v Pereira, 35 NY2d 301, 308). Of course, the party charged must have had knowledge of the court’s order (Matter of McCormick v Axelrod, 59 NY2d 574, 583, supra; see also, People ex rel. Stearns v Marr, 181 NY 463, 470).
Although the City sought to have Central Hudson held in both civil and criminal contempt, the underlying dispute between the parties has been settled and the City has requested withdrawal of the contempt motion in its entirety. We are satisfied that the City’s concession that no calculable monetary damages were suffered, coupled with Justice Gagliardi’s confirmation of this fact, effectively disposes of the civil contempt allegations. There is no longer any vitality or purpose to further consideration of the civil contempt charge.
We are likewise satisfied that the motion may be withdrawn in its entirety with respect to individual respondents, the corporate officers.
In contrast, we cannot accept the parties’ private resolution in the matter with respect to the very serious charge of criminal contempt by the utility itself. Allegations of willful disobedience of a proper judicial order strike at the core of the judicial process and implicate weighty public and institutional concerns regarding the integrity of and respect for judicial orders. Based on Justice Gagliardi’s findings and compelling jurisprudential principles, we reject the parties’ request for withdrawal of the criminal contempt motion as to Central Hudson.
*241 On the merits, the record supports the finding that Central Hudson was not acting in good faith when it continued to burn coal after having received notice from its own counsel of the partial stay order. We conclude that Central Hudson acted with the requisite willfulness needed to sustain the extraordinary sanction of a criminal contempt.
As with all charges of criminal contempt, the court must look first to the order which Central Hudson is alleged to have disobeyed and then apply the legal principles to the fact findings. To determine whether or not there was a willful violation, Central Hudson’s conduct and the conduct of its legal representatives must be examined in light of the express terms of the order (Ketchum v Edwards, 153 NY 534). If the terms of an order are vague and indefinite as to whether or not a particular action by a party is required or. prohibited, then of course that cannot be the basis of a criminal contempt (Pereira v Pereira, 35 NY2d 301, 308, supra). Where the order alleged to have been disobeyed is capable of a construction consistent with the innocence of the party, there likewise should be no adjudication of contempt (Ketchum v Edwards, 153 NY 534, supra). "Guilt arises only where the authority of the court is flouted” (Matter of Spector v Allen, 281 NY 251, 260).
In its papers in opposition to the contempt charges, Central Hudson concedes that it continued to burn coal after having been informed of the partial stay order. Central Hudson’s defense is that the partial stay order did not order stoppage of coal burning. To support its interpretation, Central Hudson argues that the partial stay does not prohibit the burning of coal at Danskammer Unit 4, but was meant only to clarify for any other court faced with a challenge to the subsequent permit that the order does not independently authorize the burning of coal. Central Hudson urges that this interpretation is not only consistent with the express terms of the stay, but is also consistent with the April 9, 1987 in-chambers discussion between the parties and the Judge who issued the order. As an alternative argument, Central Hudson contends that it should not be found in contempt because Central Hudson relied on counsel’s interpretation of the partial stay order and counsel’s advice to continue to burn coal. These arguments are unavailing.
When the Appellate Division order was entered on April 7, 1987, Central Hudson was left without authority to continue *242 construction or to burn coal at Danskammer. This is so because the order annulled the State Commissioner’s primary authorization of June 19, 1985. Thus, everything based on this determination, including the February 27, 1987 operating permit, fell with that judicial annulment. The only way Central Hudson could lawfully continue any phase of the Danskammer project was to obtain stay relief from the Court of Appeals. The key order to show cause signed on April 10, 1987 permitted only plant conversion construction to continue and specifically stated that it did not authorize the burning of coal. There was thus no longer any agency or judicial authorization to burn coal. Its argument now that it was relying on a selective part of the in-chambers hypothetical questioning at the motion hearing is unavailing because it is customarily and professionally understood that no such reliance is permissible, and because its own counsel conceded before Justice Gagliardi that there was an express advisement that statements made at that time were merely exploratory and should not be construed as rulings (see, Referee’s Report, May 29, 1987, at 85). Based on the evidence adduced at the hearing before Justice Gagliardi, all of the participants understood what the competing goals of the parties were: the City wanted to stop coal burning and the utility wanted at least to continue its conversion construction project. The signed order to show cause expressly reflected that dichotomy.
Central Hudson had actual notice of the order granting only partial relief, i.e., continuation of construction, since the terms of the order were promptly communicated orally and in writing to its attorneys, Mr. Gitlen and to his associate Philip Dixon. The client cannot successfully argue that it is shielded from contempt by reliance on its lawyer’s advice in this case, because that would allow judicial orders to be too easily evaded and disobeyed.
Under these circumstances, Central Hudson put itself in violation of a clear mandate of this court when it continued to burn coal at Unit 4. In effect, Central Hudson sought a whole loaf of relief and, when granted only a half, took the rest by a calculated misinterpretation of the subject order.
Accordingly, the application to withdraw the motion for contempt is granted to the extent only of approving the withdrawal of the civil contempt aspect; the motion for criminal contempt is granted, with costs, only as against Central *243 Hudson which is fined the statutory maximum of $250 (Judiciary Law § 751 [1]).
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur in Per Curiam opinion.
Application to withdraw the motion for contempt granted, etc.