OPINION OF THE COURT
Jonathan Lippman, J.
Factual and Procedural Background
This motion for contempt against respondents, when viewed in light of the two other related proceedings growing out of the same facts as this proceeding, is only the latest step in petitioner’s so far fruitless efforts to obtain approval for a site plan application which complied with the requirements found in the current version of the Zoning Code of the Village of Mamaroneck. Despite the fact that petitioner initiated the approval process for its site plan application on January 9, 2004, to date, respondents’ review of it has been in a perpetual holding pattern as the result of: (1) the vigorous opposition efforts of a local neighborhood group, Shore Acres Property Owners Association (SAPOA); (2) respondents’ appeal of the court’s April 2004 decision; and (3) respondents’ position that the Village of Mamaroneck’s Board of Trustees’ enactment of successive moratoria on all development in the Marine Recreation Zoning District— the zoning district in which the petitioner’s property is located — has stayed respondents’ ability to review and render a determination on petitioner’s site plan application.
As set forth in more detail below, the instant CPLR article 78 proceeding, originally commenced by order to show cause on April 15, 2004, involved petitioner’s request for an order of mandamus compelling respondents to initiate their review of petitioner’s site plan application and to render a determination thereon. A second article 78 proceeding (Index No. 11159/04) brought in July 2004 sought to annul the Village Board’s decision to deny petitioner a variation from a moratorium that had been enacted on April 26, 2004 and which had the effect of staying the review and approval of all applications for development of properties located in the Marine Recreation Zoning District (the MR District). The third proceeding, a declaratory judgment action (Index No. 8818/05) brought in May 2005, currently sub judice, seeks an order from this court declaring the moratoria that have been successively enacted since 2004 to be
“ultra vires, void, and an illegitimate use of the police and zoning power, in that they are not a reasonable, necessary, and limited response directed at *1025 redressing a genuine crisis or emergency, or to consider comprehensive zoning changes, but a pretext to assuage strident community opposition to the Club’s plans to improve its property as of right, as permitted by the 1985 zoning ordinance and the LWRP [the Village’s Local Waterfront Revitalization Program]” (complaint 11 64).
The facts underlying the instant article 78 proceeding are not in dispute. Petitioner owns a beach and yacht club located on a 12.84-acre site in the MR District in the Village of Mamaroneck. Petitioner initially presented its proposal to the Planning Board in July 2003. Based on input received from the Planning Board and the Village’s planning consultant, Frank Fish of Buckhurst Fish & Jacquemart, Inc., on or about January 9, 2004, petitioner submitted its application for site development approval to the Planning Board.
The application involves petitioner’s proposal to make alterations to its existing clubhouse, to construct a new yacht club building, and to construct 31 seasonal residences, 20 cabanas, and 26 parking spaces (the project). The main controversy surrounding the project has to do with the construction of 31 seasonal residences (ranging in size from 700 to 1,000 square feet) which would house petitioner’s “snow bird” members during those months of the year that they utilize petitioner’s facilities (most likely for the months of April to October).
In the cover letter to the application dated January 9, 2004, petitioner requested that the application be placed on respondents’ January 22, 2004 agenda, and further set forth its understanding of the actions the Planning Board would undertake at that meeting (i.e., that the Planning Board would declare its intent to be lead agency pursuant to New York’s State Environmental Quality Review Act [SEQRA], ECL 8-0101 et seq. and begin its SEQRA and site plan review process). On or about January 14, 2004, the building inspector issued a memorandum to the Planning Board which set forth his determination that the application was consistent with certain provisions of the Zoning Code, including his view that the seasonal residences proposed were a permitted accessory use. Thereafter, in a memorandum dated February 18, 2004 from the Village’s planning consultant, Mr. Fish stated that: (1) it was the Building Department’s view that the Planning Board had a complete application before it and could proceed with its SEQRA and site *1026 plan review; (2) it is “the opinion of both the Building Inspector and of Kevin Plunkett . . . [the Village Attorney] that the proposed seasonal housing can be considered accessory uses to the principal permitted use of the clubhouse.[1] Accordingly, the application is deemed appropriate as submitted in terms of its listing of permitted principal and accessory uses”; and (3) the Planning Board may proceed with its review despite the fact that the CZM (the Village’s Harbor Coastal Zone Management Commission) had not yet rendered a decision with regard to whether the application was consistent with the “local waterfront revitalization plan” (see verified petition, exhibit C, at 2).
On March 12, 2004, the attorney representing SAPOA sought review of the building inspector’s January 14, 2004 determination by filing an appeal with the Village’s Zoning Board of Appeals (the ZBA). It was SAPOA’s view “that the proposed construction of thirty-one (31) additional residential units on the site far exceeded] the permitted residential use of the property under Zoning Code former § 342-35 (B) (6) which contemplates minor residential uses as accessory to the principal permitted use as a Club” (verified petition, exhibit E). In the meantime, the Planning Board had placed petitioner’s application on its agenda for a public hearing at the Planning Board’s March 25, 2004 meeting. After learning that the Planning Board intended to proceed with their review of the project, in a letter dated March 22, 2004, SAPOA’s lawyer advised the Planning Board of SAPOA’s position that its appeal to the ZBA stayed all proceedings (including proceedings before the Planning Board) with regard to petitioner’s application until the ZBA rendered a determination on the appeal (see verified petition, exhibit F). During this same time period, the Village’s manager, in a memorandum dated March 10, 2004, had separately written to the Planning Board’s chairperson and advised him that the Village Board was considering the enactment of a moratorium so the Planning Board “may want to consider withholding any further action at this time pending the Board reaching a decision on declaring the moratorium” (verified petition, exhibit H).
*1027 When petitioner appeared for the public hearing on March 25, 2004, the Planning Board adopted the position set forth in SAPOA’s lawyer’s letter and advised petitioner that no further action would be taken on the application since it was stayed pursuant to the provisions of Village Law § 7-712-a (6). At that point, petitioner sought relief from this court. Thus, on April 15, 2004, the day before the Village Board noticed the public hearing with respect to the moratorium, petitioner commenced this article 78 proceeding. Attached as an exhibit to petitioner’s verified petition was a copy of the Village Board’s April 16, 2004 notice as well as the text of the proposed moratorium. The petition asserted that ££[s]uch zoning moratorium, if enacted[,] would prevent the Respondent Planning Board from hearing and determining applications for site plan approval with the . . . [MR District]” which includes petitioner’s application (verified petition 1Í 45). In its second cause of action, petitioner claimed that <£[u]nder New York State law, it is illegal and improper for a Planning Board to delay consideration of an application in order to give the legislative body of the municipality the opportunity to declare a zoning moratorium and thereafter amend the zoning ordinance so as to defeat the rights of an applicant” (verified petition 11 42). To thwart off the potentially damaging consequences that would occur as the result of the moratorium’s enactment, petitioner requested that the court “direct the Respondent Planning Board to hear and determine . . . [petitioner’s] Application under the current zoning ordinance, irrespective of whatever zoning moratorium and zoning amendments may be enacted by the Board of Trustees in the future” (verified petition U 47).
The petition also alleged that respondents were improperly using the SAPO A appeal as their rationale for delaying indefinitely their review of petitioner’s application in accordance with their obligations under the Zoning Code and their obligations under SEQRA since Village Law § 7-712-a (6) did not invoke a stay of respondents’ obligations to review the application and render a determination. Petitioner alleged in its first cause of action that it was being damaged as the result of respondents’ failure to comply with its obligations under SE-QRA and their failure to conduct the required site plan review pursuant to Zoning Code § 342-79.
In the affidavit submitted in support of its petition, petitioner requested that the court adjudicate the proceeding with “due expediency” because
*1028 “[i]f the proposed Local Law is enacted at the public hearing scheduled for April 26, 2004, then the SAPOA will have succeeded in preventing the Club from having its application heard so that the SAPOA can continue to pressure the Board of Trustees to change the definition of accessory uses in . . . [the MR District]. Consequently, the SAPOA will have accomplished its goal of denying the Club the right to do what the Building Inspector, Village Planning Consultant and Village Attorney have all acknowledged the Club has the right to do — construct seasonal residences on its property within . . . the [MR District]” (affidavit of Bernard Rosenshein f 17).
In opposition, respondents argued, inter alia, (1) that the appeal by SAPOA invoked an automatic stay of any further proceedings by the Planning Board until the ZBA rendered a decision on SAPOA’s appeal, and (2) that the court should reject petitioner’s
“argument that the current Code, irrespective of whatever zoning moratorium and zoning amendments may be enacted by the Board of Trustees in the future, should be applied to the Application. The Club failed to demonstrate any special facts that would preclude the application of the rule that the courts are bound to apply the law as amended when a zoning law has been amended after the submission of an application seeking an approval but before a decision is rendered thereon by the reviewing agency” (affirmation of Kevin J. Plunkett, Esq. 1i 49).
In view of the urgency of the relief requested by petitioner, this court issued its April 2004 decision within a week of the article 78’s filing. In the April 2004 decision, this court rejected respondents’ arguments and granted the petition in its entirety by directing the Planning Board: (1) to declare its intent to act as lead agency in conjunction with the Mamaroneck Beach & Yacht Club, Inc.’s (MBYC) application pursuant to SEQRA; (2) to conduct the appropriate environmental review pursuant to SEQRA; and (3) to proceed with site plan review of the MBYC’s application “and render a decision thereon pursuant to Section 342-79 of the Village of Mamaroneck Zoning Code as presently written without further delay” (Sup Ct, Westchester County, Apr. 2004, slip op at 8).
*1029 The issue regarding the effect of the moratorium was also raised during the appeal of the April 2004 decision. Thus, in their reply brief, respondents-appellants argued that the Planning Board was not wrongfully delaying consideration of the application since
“even if the stay did not exist, the Local Law prevents the Planning Board from considering or approving the Application while the Local Law is in effect. The fact that the Decision was rendered prior to the Planning Board’s April 22, 2004 meeting is irrelevant. Even if the Planning Board had considered the Application at that meeting, it would not have been able to approve it that night. Accordingly, the Local Law still would have prevented the Planning Board from considering or approving the Application” (reply brief at 15-16).
In opposition, petitioner argued that there was no reason to make it “wait until the moratorium expires or the Board of Trustees decides whether to amend the Village Code relating to accessory uses allowed in the [MR District], given that it was entitled to the relief prior to the moratorium having been enacted” (brief of petitioner-respondent at 37). Thus, petitioner argued that the appropriate remedy was to require that the Planning Board comply with this court’s April 2004 decision, nunc pro tunc, to the date it was written, and have the Planning Board engage in its SEQRA review and consider the application based on the current version of the Village Zoning Code (see id.).
In its December 2005 decision, the Appellate Division, Second Department, discussed the procedural posture of the case (i.e., that the Village Board was contemplating the enactment of a moratorium in order to address the meaning and definition of an accessory use and that the Village Board had specifically requested that respondents withhold their review until it had made a decision on the moratorium), affirmed the court’s April 2004 decision in all respects, and specifically found the remaining contentions of respondents to be without merit (24 AD3d 669 [2005]).
Following the Appellate Division’s affirmance, petitioner’s counsel wrote to respondents and demanded that respondents restore petitioner’s application to the Planning Board’s January 12, 2006 agenda, and that respondents comply with the directives set forth in this court’s April 2004 decision (see letter dated Dec. 28, 2005 from Paul J. Noto, Esq. to Planning Board, *1030 exhibit M to affidavit of Jonathan D. Lupkin, Esq.). The Village responded in a letter dated January 9, 2006 from, the Village’s attorney, Lino Sciarretta, Esq. In that letter, the Village took the position that respondents had no obligation to follow the court’s directives because respondents’ review was still stayed until the conclusion of the effective period of any outstanding moratorium (see Lupkin affidavit, exhibit N). Based on respondents’ continued refusal to comply with the mandamus relief afforded in the April 2004 decision, petitioner has brought the instant motion to hold respondents in contempt pursuant to CPLR 5104 and Judiciary Law § 756.
Legal Discussion
Petitioner Has Satisfied Its Burden of Showing that Respondents Have Violated the Directives Set Forth in This Court’s April 2004 Decision
In support of its motion to hold respondents in contempt, petitioner argues that
“this latest excuse by the Planning Board for its refusal to process and review the MBYC’s Application has crossed the line and is contemptuous. The issue of the moratorium was raised before this Court and before the Appellate Division, and both Courts, in directing that the Planning Board consider, review and render a decision with respect to the MBYC’s Application, flatly rejected any argument that the processing of the MBYC’s Application by the Planning Board was stayed based on the moratorium” (Lupkin affidavit 11 7).
Petitioner further contends that
“[bjecause the issue of a stay based on the Moratorium was raised and rejected by the Court in both the April 2004 Order and the Appellate Division December 2005 Decision, the Planning Board is precluded by the doctrine of collateral estoppel from arguing that the Moratorium is a basis for its continued noncompliance with the directives of this Court” (petitioner’s mem of law at 12).
Petitioner requests that the court hold respondents in contempt, fine them in an amount sufficient to ensure their compliance *1031 with the court’s April 2004 decision, and award petitioner its costs and attorneys’ fees.
The crux of respondents’ opposition is that they are obligated to follow the moratorium despite the clear directives set forth in this court’s April 2004 decision because: (1) the court’s April 2004 decision did not address the contingency of the moratorium’s enactment since it occurred subsequent to this court’s April 2004 decision, which respondents contend was limited to “the legal question of whether there is an automatic stay of proceedings when a third party appeals to the zoning board of appeals” (affirmation of Kevin J. Plunkett, Esq. H 7), and (2) even petitioner has acknowledged the controlling force of the moratorium (which has never been declared invalid and which remains in force today), given that it sought a variation from it from the Village Board subsequent to the court’s April 2004 decision. It is respondents’ position that “the legislative enactment of the Moratorium Local Law on April 26, 2004 rendered both the April 2004 Supreme Court Decision and the Appellate Division Decision moot” (id. 1f 9). As their alternative argument, respondents contend that “the ambiguity of the April 2004 Supreme Court Decision and the Appellate Division Decision with respect to whether the Planning Board was required to consider the Application even if a moratorium was enacted, and the lack of injury to the Club’s rights and remedies prevent a determination of contempt” (id. U 10). Finally, respondents contend that “collateral estoppel does not prevent the Planning Board from arguing that it cannot consider the Application as a result of the Moratorium Local Law and Variation Decision. Such issue was not necessarily decided or even addressed in the April 2004 Supreme Court Decision or the Appellate Division Decision” (id. IT 11).
Respondents’ first argument must be rejected in light of the procedural posture of the case and the fact that the issue regarding the potential effect of the impending moratorium was fully briefed by both petitioner and respondents in their papers submitted in that proceeding. As a result, this court acknowledged the impending enactment of the moratorium and nevertheless ordered that the respondents proceed with their review of the application with all due speed in accordance with the Zoning Code as presently written. The court’s April 2004 decision is not dissimilar to the decision rendered in Matter of McDonald’s Corp. v Houlihan (NYLJ, Mar. 20, 2002, at 24, col 3, affd 302 AD2d 392 [2003], lv denied 100 NY2d 504 [2003]). In *1032 that case, the lower court annulled a building inspector’s determination to deny a building permit to petitioners based on a recently enacted zoning amendment which made fast food restaurants a prohibited use. The court further directed that the building inspector review the permit application in accordance with zoning regulations in effect at the time of the permit application. The decision was appealed and, during the appeal, another zoning amendment was enacted to make fast food restaurants a prohibited use and the building inspector again denied the application based on the new zoning amendment. In the second article 78 proceeding that ensued, the court again annulled the building inspector’s determination and held that as a result of the first order, the building inspector
“had the authority and requirement to review the application in accordance with the prior zoning regulations even though the application did not conform to the newly adopted Local Laws No. 15 and 18 that were in effect at the time of review in February 2001 ... In light of the above, it is not necessary to consider the applicability of the ‘special facts exception’ ” (Matter of McDonald’s Corp. v Houlihan, NYLJ, Mar. 20, 2002, at 24, col 5).
In affirming the lower court’s decision, the Appellate Division, Second Department, held “the Supreme Court properly directed the Chief Building Inspector to review the petitioners’ building permit application in accordance with the applicable zoning regulations as they existed [at the time of the permit application]” (Matter of McDonald’s Corp. v Houlihan, 302 AD 2d 392, 392 [2003], lv denied 100 NY2d 504 [2003]; see also Matter of Greco v Trincellito, 206 AD2d 779, 781 [1994] [“Supreme Court’s judgment in the prior proceeding directed the Town to issue the building permit and, therefore, the Building Inspector had the authority to do so even though Roadway’s proposed commercial use of the property was not permitted by the zoning ordinance”]).
Similarly, in Caruso v Town of Oyster Bay (250 AD2d 639 [1998]), plaintiffs’ application for a permit to build a second home on their property was not processed because the Town Board was considering a zoning reclassification which would double the required lot size in the applicable district and render the lot unbuildable without variances. Approximately two weeks after plaintiffs filed their permit application, the Town Board adopted a moratorium on building permits for new home *1033 construction. This declaratory judgment action ensued and plaintiffs sought, inter alia, an injunction against the zoning change and the continued enforcement of the moratorium. The lower court entered an order and judgment declaring the moratorium invalid and unenforceable and directing “the Town of Oyster Bay to review the building permit application of the plaintiff Joseph Caruso immediately upon service upon them of a copy of the order and to apply ‘Residence “C” zoning criteria’ ” (Caruso, 250 AD2d at 639). On appeal, the Appellate Division, Second Department, modified the lower court’s decision by deleting the provision declaring the moratorium to be invalid and unenforceable and substituting a provision finding it valid and enforceable and otherwise affirming the lower court’s determination holding “it was proper for the Supreme Court to direct the Town to review his application pursuant to the zoning criteria which applied when he filed his original application” (Caruso, 250 AD2d at 640 [citation omitted]).
In the present circumstance, the court’s April 2004 decision trumps the moratorium that was subsequently enacted, and respondents may not rely on the moratorium as their justification for failing to follow the court’s April 2004 decision. Thus, respondents’ court-ordered direction to proceed with their review and determination of petitioner’s application was not changed by the moratorium’s enactment.
Respondents’ second argument — that by applying for a variation from the moratorium, even petitioner has acknowledged its controlling force — is also without merit. At the time petitioner sought the variation from the moratorium, the court’s April 2004 decision had been automatically stayed based on respondents’ appeal (CPLR 5519 [a]). Accordingly, because petitioner could not enforce the April 2004 decision, petitioner chose to seek a variation from the moratorium from the Village Board in the hopes that the Village would reinitiate their processing of petitioner’s application. The only issue presented to the court in that article 78 proceeding was whether petitioner had satisfied its burden of showing unnecessary financial hardship, which was required in order for the Village Board to grant a variation request. Based on the narrow issue facing the court, the court upheld the Village Board’s determination since petitioner had not produced any evidence that it was suffering an unnecessary financial hardship as the result of the moratorium and the decision “did not address the obligation of the Planning Board to act on the MBYC’s Application as directed by the April 2004 Or *1034 der irrespective of the Moratorium” (petitioner’s mem of law at 7).
Moreover, in the second article 78 proceeding, this court confirmed that if the court’s decision of April 2004 were affirmed on appeal, petitioner would be entitled to proceed with its application. Thus, in a decision and order dated November 29, 2004, this court held that “[fin. the event that the Planning Board chooses to withdraw its appeal or fails to perfect the appeal, or the Appellate Division affirms the April 20, 2004 decision, then Petitioner will be entitled to proceed with its Application” (Sup Ct, Westchester County, Nov. 29, 2004, slip op at 7 [emphasis added]). Thus, with the affirmance of the April 2004 decision, petitioner was entitled to have its application processed in accordance with this court’s directives regardless of whether or not a moratorium was still in existence.
The court further finds that respondents are barred by collateral estoppel from raising the issue presented herein (i.e., that the moratorium stays respondents’ power to review and render a determination on petitioner’s application). The petition requested that the court decide whether petitioner was entitled to the swift review of its application under the Zoning Code then existing irrespective of whatever moratorium that would be enacted. To view the decision as being limited to the validity of the stay based on SAPOA’s appeal is contrary to the procedural posture of the case, the relief requested by petitioner, and the court’s direction that the site plan review and determination proceed without delay under the Zoning Code as presently written. Accordingly, since the issue of whether the moratorium had any effect on the Planning Board’s ability to render a determination on petitioner’s application was material and necessary to the court’s directive and, since the argument was dismissed as without merit by the Appellate Division in its December 2005 decision, the court finds that respondents are collaterally estopped from arguing that the moratorium prevents the Planning Board from reviewing and rendering a determination on petitioner’s application (see Ryan v New York Tel. Co., 62 NY2d 494, 500 [1984]).
Petitioner requests that the court hold respondents in contempt pursuant to Judiciary Law § 753, which provides, in relevant part:
“A court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or rem *1035 edy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced, in any of the following cases
“(3) . . . for any other disobedience to a lawful mandate of the court” (Judiciary Law § 753 [A] [3]).
It is the burden of the party moving for contempt to prove the other party’s violation of a clear and unequivocal court order by a reasonable degree of certainty.
“To sustain a finding of . . . civil . . . contempt based on an alleged violation of a court order it is necessary to establish that a lawful order of the court clearly expressing an unequivocal mandate was in effect ... It must also appear with reasonable certainty that the order has been disobeyed ... Of course, the party charged must have had knowledge of the court’s order” (Matter of Department of Envtl. Protection of City of N.Y. v Department of Envtl. Conservation of State of N.Y, 70 NY2d 233, 240 [1987] [citations omitted]),
and must show that the violation “was calculated to, or actually did, defeat, impair, impede, or prejudice the rights or remedies of a party to an action or special proceeding” (Judiciary Law § 770; see also McCain v Dinkins, 84 NY2d 216, 226 [1994]; Matter of Fishel v New York State Div. of Hous. & Community Renewal, 172 AD2d 835, 837 [1991]).
Here, petitioner has shown that respondents have not followed this court’s April 2004 decision that they proceed with their SEQRA and site plan review of petitioner’s application and render a determination thereon under the Zoning Code as presently written. In that decision, this court found that the respondents had abrogated their duty to commence their review of petitioner’s application within the 45 days required by Zoning Code of Village of Mamaroneck § 342-79 — an application which respondents themselves have acknowledged met the definition of accessory uses in the MR District. It is incumbent upon respondents to now start the review that they should have begun in earnest within 45 days of the date of the filing of petitioner’s application on January 9, 2004. Whatever the substance or validity of any new zoning amendment that may or may not ultimately be adopted and whatever justification respondents may feel they had in the past for not complying *1036 with the court’s 2004 decision,[2] the time within which they should have started their SEQRA and site plan review has long since passed. Petitioner is entitled to that review and to a determination under the zoning law as it existed at the time of petitioner’s application. Once the Appellate Division affirmed the April 2004 decision on December 19, 2005, there was no longer a stay in effect with regard to the April 2004 decision and respondents were thereafter without legal basis for failing to comply with this court’s directives.
Conclusion
The court finds that petitioner has satisfied its burden of showing its entitlement to the enforcement of the court’s April 2004 decision through contempt based on respondents’ failure to follow the clear and unambiguous directive that they review and determine petitioner’s application under the Zoning Code as presently written without further delay, and that such failure is defeating, impairing and impeding petitioner’s right to have respondents review and render a determination on its application. Nevertheless, in the court’s discretion, petitioner’s motion is granted only to the extent that respondents will be held in contempt of this court’s April 2004 decision, as affirmed by the Appellate Division, Second Department’s December 2005 decision, if they fail to comply as soon as reasonably practicable, but in no event later than 30 days from the date of this decision. Respondents are obligated to notify the court, in writing, within five days of the date that they initiate their site plan and SE- *1037 QRA review of petitioner’s application. In the event that respondents fail to begin their SEQRA and site plan review prior to the expiration of this 30-day period, petitioner may apply to this court, on notice to respondents, for an order holding respondents in contempt and scheduling a hearing for the purpose of taking evidence on the costs and attorneys’ fees petitioner has incurred in bringing the instant motion for contempt and the fine, if any, to be imposed as the result of respondents’ failure to initiate their SEQRA and site plan review.

. Pursuant to Zoning Code of Village of Mamaroneck former § 342-35 (B) (6), seasonal residences are a permitted accessory use (i.e., a use subordinate to and incidental to the primary use of the property) since the definition of accessory use and accessory buildings includes “[Residences for caretakers and staff and seasonal residences for club members and guests.” There are no limitations on the square footage of such accessory uses, except with regard to catering facilities which are limited to 40% of the principal use.

. As recently as January 2005, respondent Planning Board’s chairperson stressed that any limitation on the ability of petitioner to construct seasonal housing directly contradicts the intent behind the Village’s adoption of the LWRP and that the moratorium was contrary to the purposes of the LWRP to “the nth degree” since its purpose was to encourage clubs like petitioner’s to flourish (see transcript of Planning Board meeting, Jan. 27, 2005, at 16, 17, 19, 22, complaint, exhibit J). The Village’s planning consultant and the Planning Board chairperson have stated that the LWRP is designed to ensure that the clubs in the MR District remain financially viable by encouraging, preserving and protecting club uses (see transcript at 16, 19; Analysis of Seasonal Housing, Mamaroneck Marine Recreation District, prepared by Buckhurst Fish & Jacquemart, Inc., at 17 [Jan. 2005], complaint, exhibit I). Nevertheless, approximately one year later, at a January 23, 2006 meeting of the Village Board, a proposed amendment to the Zoning Code was presented to the Village Board that would have limited the number of seasonal residences on petitioner’s property to approximately five dormitory-style rooms with no cooking facilities. Such residences would not be marketable for the purpose of meeting petitioner’s members’ housing needs. The proposed amendment has now been taken off the table, and how much longer the moratorium will remain in effect is not clear.