**Board of Mgrs. of the 7 MetroTech Condominium v Deruytter**

2025 NY Slip Op 31651(U)

May 6, 2025

Supreme Court, New York County

Docket Number: Index No. 655761/2019

Judge: Kathleen Waterman-Marshall

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | |
|---|---|---|
| **PRESENT:** | **HON. KATHLEEN WATERMAN-MARSHALL** | **PART** 31M |
| | *Justice* | |

-------------------------------------------------------------------------------X

THE BOARD OF MANAGERS OF THE 7 METROTECH
CONDOMINIUM

Plaintiff,

- v -

WOUTER DERUYTTER,

Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 655761/2019 |
| **MOTION DATE** | 08/12/2024, 10/09/2024, 11/29/2024 |
| **MOTION SEQ. NO.** | 002 003 004 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 52, 53, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 159

were read on this motion to/for          PREL INJUNCTION/TEMP REST ORDR    .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 68, 70, 71, 94, 95, 96, 97, 98, 99, 160

were read on this motion to/for                 CONTEMPT         .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 102, 103, 104, 105, 106, 107, 108, 109, 111, 112, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158

were read on this motion to/for                 CONTEMPT         .

This matter was administratively transferred to Part 31 in late January 2025.

Upon the foregoing documents, and following oral argument on February 28, 2025, the motions by plaintiff The Board of Managers of the 7 MetroTech Condominium (the "Board") for an order: (1) granting a preliminary injunction against defendant Wouter Deruytter ("Mr. Deruytter") and anyone claiming occupancy in units 5PRO, 16PRO, and 16D (the "Units") of the building located at 365 Bridge Street a/k/a 101 Willoughby Street, Brooklyn, New York 11201 (the "Building") (Motion Seq. 002); (2) holding Deruytter in criminal and civil contempt for violating a court order and awarding the Board attorney's fees (Motion Seq. 003 and 004); and (3) for a default judgment (Motion Seq. 004), are granted in part.

## Background

The Board commenced this action to recover amounts it paid for violations issued by the New York City Department of Buildings, Environmental Control Board, resulting from Mr. Deruytter's unauthorized alterations to one or more of the Units, in breach of the Building's

**655761/2019 THE BOARD OF MANAGERS OF THE 7 METROTECH CONDOMINIUM vs.**         **Page 1 of 6**
**DERUYTTER, WOUTER**
**Motion No. 002 003 004**

[* 1]

Declaration and By-Laws (the "By-Laws"). The complaint alleges causes of action for breach of contract, unjust enrichment, declaratory judgment, attorney's fees, and a preliminary injunction.

Before the administrative transfer of this matter, the Board moved by Order to Show Cause for a preliminary injunction (Motion Seq. 002), arguing that Mr. Deruytter has continuously violated the By-Laws, including performing unauthorized alterations to the Units and engaging "in a pattern of disruptive and offensive behavior" in the Building. Specifically, the Board alleges that: Mr. Deruytter has allowed unauthorized guests, including Patrick Sands ("Sands"), to occupy Unit 16PRO, a professional unit in the Building solely meant for professional use; and Mr. Deruytter and such unauthorized guests routinely disturb the Building's permitted occupants and staff by engaging in "disruptive and dangerous" behavior, which has impacted the safety and wellbeing of everyone in the Building, resulting in "frequent" calls to the police and disturbances in the Building, including in its common areas.

By Decision and Order, dated August 13, 2024, the prior jurist (Hon. Louis Nock, JSC) granted the Board temporary relief (the "August 2024 Order"), restraining Mr. Deruytter from: (1) permitting anyone to sleep overnight in Unit 16PRO; (2) creating a nuisance and/or a source of annoyance to the Building's residents and interfering with the peaceful possession or proper use of the premises by its residents or occupants by engaging in objectionable conduct, including causing excessive noise and loitering in the Building's common areas; (3) disobeying, threatening, harassing, and/or intimidating the Building's staff, including verbal abuse, threatening with weapons, and or causing physical harm in any way; and (4) violating the By-Laws and the Building's Rules and Regulations (NYSCEF Doc. No. 47).

In support of its motion for a preliminary injunction, the Board submits the By-Laws, which provide, *inter alia*, that: nuisance is prohibited in the Building, and any use of any unit or common area of the Building cannot create a source of annoyance to the Building's residents or interfere with the peaceful possession or proper use of the Building by its residents or occupants; professional units shall be used in compliance with applicable law; the Board may, upon the Board's prior written consent, authorize the use of any unit for any other purpose in compliance with law and certificate of occupancy; the Board is entitled to take proceedings to enjoin, abate, or remedy any continuance or repetition of any violation of the By-Laws; and the Board is entitled to reimbursement of costs and expenses, including reasonable attorney's fees and disbursements, relating such proceedings. The Board also submits the Building's staff logs, showing a history of incidents involving unauthorized guests visiting one of the Units and/or calls to the police, and the Building's guest policy contained in the Building's Rules and Regulations (an addendum to the Building's By-Laws), providing that any unaccompanied guests are prohibited from loitering in the hallways or other common areas in the Building, and that the Board or the Building's management or staff may, in its discretion, require occupants to personally escort their guests from the lobby to units, and communications showing that such policy applies, and was communicated, to Mr. Deruytter.

Mr. Deruytter opposes, arguing that he has not violated the By-Laws[1], which permit alterations to the Units (with exceptions) to the extent not prohibited by law, because he simply made "cosmetic improvements" to Unit 16PRO and, thus, the Board's consent to such

---

[1] Specifically, Article 12 of the Building's Declaration (NYSCEF Doc. No. 78).

**655761/2019   THE BOARD OF MANAGERS OF THE 7 METROTECH CONDOMINIUM vs.
DERUYTTER, WOUTER
Motion No.  002 003 004**                                                                 **Page 2 of 6**

improvements was not required. Mr. Deruytter also claims that the Board is unlikely to succeed on the merits because the violations have allegedly been resolved (NYSCEF Doc. No. 93).

The Board subsequently moved, by separate Orders to Show Cause (Motion Seq. 003 and 004), for orders: finding Mr. Deruytter in civil and criminal contempt of the August 2024 Order; sentencing Mr. Deruytter to a term of imprisonment for willfully violating the August 2024 Order; and awarding the Board attorney's fees for filing the instant motions for contempt.

In support of its first contempt motion (Motion Seq. 003), the Board asserts, *inter alia*, that Mr. Deruytter has violated the August 2024 Order by continuously: (1) permitting unauthorized guests to stay overnight in Unit 16PRO in violation of the By-Laws; (2) creating a nuisance in the Building by failing to escort guests from the lobby to the Units in violation of the Building's guest policy which has resulted in numerous calls to the police and/or police escorting unauthorized guests from the Building; and (3) disregarding the Building's By-Laws by permitting banned guests into the Building. One such incident involved a dispute between two unauthorized guests who argued and threatened each other in the Building's lobby while blocking the elevators. Another incident involved a third unauthorized guest who allegedly harassed and threatened a member of the Building's staff.

In opposition, Mr. Deruytter argues that: he did not allow anyone to sleep overnight in Unit 16PRO because he notified Sands of the restriction; and he had no knowledge or control over the incidents alleged to have caused a nuisance in the Building because the unauthorized guests were not his guests, but rather Sands' guests.

On its second contempt motion (Motion Seq. 004), the Board asserts the same claims as its first but highlights an incident that occurred on November 21, 2024, in which police removed from the premises a naked unauthorized guest who was roaming the Building midday for at least an hour. Based on the Board's security footage, the unauthorized guest appeared to be visiting Sands in Unit 16PRO. The Board also argues that it is entitled to a default judgment against Mr. Deruytter for allegedly failing to file an answer to the amended complaint.

In opposition, Mr. Deruytter argues that: the Building's staff permits Sands to escort his guests from the lobby without notifying him of such guests, which prevents Mr. Deruytter from knowing of their presence in the Building. Mr. Deruytter also argues that the Board's motion for a default judgment should be denied because he answered the original complaint and after four years of inactivity the Board moved to amend the complaint, which was allegedly never served upon him.

## Discussion
### Injunction
The standard for granting a preliminary injunction is well established. Pursuant to CPLR § 6301, the movant must show: (1) the likelihood of success on the merits; (2) irreparable injury absent the granting of a preliminary injunction; and (3) a balancing of the equities that favors the movant's position (*Nobu Next Door, LLC v Fine Arts Hous., Inc.*, 4 NY3d 839, 840 [2005]). The decision to grant or deny a preliminary injunction lies within the sound discretion of the trial court (*id.*).

**655761/2019 THE BOARD OF MANAGERS OF THE 7 METROTECH CONDOMINIUM vs.** **Page 3 of 6**
**DERUYTTER, WOUTER**
**Motion No. 002 003 004**

3 of 6

[* 3]

Here, the Board has met their burden of establishing a likelihood of success on the merits in that the dispositive documents show that Mr. Deruytter has violated the By-Laws by, *inter alia*, performing alterations to Unit 16PRO without the requisite permits and allowing unauthorized guests to occupy a professional unit in the Building. The Board also demonstrated irreparable injury in the absence of a preliminary injunction given the history of incidents involving unauthorized guests which have, on several occasions, resulted in police intervention. Finally, the balance of equities clearly favors the Board. The detriment to Mr. Deruytter by granting the injunction and directing him to abide by the By-Laws – which he is required to do in the first instance, as a unit owner – is far outweighed by the detriment that would inure to the Building's authorized occupants and staff if the motion were denied. Accordingly, a preliminary injunction is proper but is limited to Mr. Deruytter, rather than third parties who either claim occupancy in the Units or enter the Building under or on Mr. Deruytter's behalf as the Board requests, since such third parties are not parties in this action and the Court lacks jurisdiction over them. Accordingly, the Board's request for a preliminary injunction is granted but limited to the relief provided in the August 2024 Order.

*Contempt*

Under Judiciary Law § 750, criminal contempt based upon an alleged violation of a court order "involves an offense against judicial authority and is utilized to protect the integrity of the judicial process and to compel respect for its mandates" (*Dep't of Env't Prot. of City of New York v Dept of Env't Conservation of State of N.Y.*, 70 NY2d 233, 239 [1987]; *El-Dehdan v El-Dehdan*, 114 AD3d 4, 15 [2d Dept 2013] [criminal contempt is "an offense against the authority of the court"]). The purpose of a criminal contempt proceeding "is solely to punish the contemnor for disobeying a court order" and the penalty imposed is punitive (*Dep't of Env't Prot. of City of New York*, 70 NY2d at 239; *El-Dehdan*, 114 AD3d at 11 [criminal contempt "aims to vindicate the authority of the court"]; *Rubackin v Rubackin*, 62 AD3d 11, 15 [2d Dept 2009] ["When the purpose of committing an individual to jail is in the nature of vindicating the authority of the court, protecting the integrity of the judicial process, or compelling respect for the court's mandates, the contempt is a criminal contempt"]; *New York City Transit Auth. v Transp. Workers Union of Am., AFL-CIO*, 35 AD3d 73, 86 [2d Dept 2006] ["A fixed sentence of imprisonment is viewed as criminal if imposed retrospectively for a completed act of disobedience, and where the contemnor cannot shorten or avoid prison through later compliance"]).

A finding of criminal contempt will be sustained where it is established that "a lawful order of the court clearly expressing an unequivocal mandate was in effect"; the alleged contemnor "had knowledge of the court's order"; and "it must also appear with reasonable certainty that the order has been disobeyed" (*Dep't of Env't Prot. of City of New York*, 70 NY2d at 240). In addition, the disobedience must be shown to be "willful" (*Rubackin*, 62 AD3d at 15; *El-Dehdan*, 114 AD3d at 15-16 ["'willful' in the criminal contempt statute, Judiciary Law § 750(A)(3), is best defined as 'intentional.'"]). As criminal contempt proceedings may result in incarceration "greater procedural protections apply, such as, *inter alia*, the right to have the contempt proved beyond a reasonable doubt, and the right to the assistance of counsel" (*New York City Transit Auth.*, 35 AD3d at 86; *Rubackin*, 62 AD3d at 15 [criminal contempt finding

**655761/2019   THE BOARD OF MANAGERS OF THE 7 METROTECH CONDOMINIUM vs.**          **Page 4 of 6**
**DERUYTTER, WOUTER**
**Motion No.  002 003 004**

4 of 6

[* 4]

requires "proof beyond a reasonable doubt that the contemnor willfully failed to obey an order of the court"]).

Civil contempt is available where "a party to the action" is guilty of "disobedience to a lawful mandate of the court" (*see* Judiciary Law § 753 [A][3]). The aim of civil contempt is "the vindication of a private right of a party to litigation and any penalty imposed upon the contemnor is designed to compensate the injured private party for the loss of or interference with that right" (*McCormick v Axelrod*, 59 NY2d 574, 582-583 [1983]). In order for the court to find civil contempt: (1) a lawful order of the court, which "clearly express[es] an unequivocal mandate," must be in effect; (2) the party sought to be held in contempt "must have had knowledge of the court's order"; (3) the alleged contemnor must have disobeyed the order; and (4) violation of the order must have resulted in prejudice to the right of a party to the litigation (*McCormick*, 59 NY2d at 583 [civil contempt found where nursing home transferred residents in violation of court order that expressed "clear mandate" staying all steps to involuntarily discharge residents pending appeal]; *v El-Dehdan*, 114 AD3d at 16-17). "A motion to punish a party for civil contempt is addressed to the sound discretion of the court, and the movant bears the burden of proving the contempt by clear and convincing evidence" (*El-Dehdan*, 114 AD3d at 10).

Here, civil, but not criminal, contempt is appropriate. The Court's August 2024 Order is a lawful court order, expressing unequivocal mandates, that has been in full force and effect (*see* NYSCEF Doc. Nos. 68 and 111), and it is undisputed that Mr. Deruytter had knowledge of the August 2024 Order. In addition, the Board proved by clear and convincing evidence that Mr. Deruytter disobeyed the August 2024 Order because Sands and his guests continue to remain overnight in Unit 16PRO in direct violation of the August 2024 Order. However, criminal contempt is not warranted at this time as the Board has not established, beyond a reasonable doubt, that Mr. Deruytter's disobedience was "willful." Further, the Board has been prejudiced by Mr. Deruytter's violation of the August 2024 Order because several incidents, including those requiring police intervention, stem from or involve the unauthorized guests potentially posing a threat to those in the Building (*Board of Managers of South Star v Grishanova*, 117 AD3d 442 [1st Dept 2014] [court properly held defendant in contempt for violating TRO]).

*Attorney's Fees*

The Court finds that the Board is entitled to reasonable counsel fees incurred in bringing the contempt motions (Motion Seq. 003 and 004), as Mr. Deruytter's conduct in violation of the August 2024 Order caused the Board to incur such expenses (Judiciary Law § 773; *Abrams v Abrams*, 227 AD3d 403 [1st Dept 2024] ["Pursuant to Judiciary Law § 773, a court may award reasonable costs and expenses, including attorney fees, to an aggrieved party as a result of contemptuous conduct"]; *see also Matter of Gonnard v Guido*, 141 AD3d 649, 650 [2d Dept 2016] [intent of Judiciary Law § 773 to indemnify aggrieved party for costs and expenses incurred as result of contempt; attorney's fees that are documented and directly related to contemptuous conduct generally recoverable unless proven excessive or reduced by court in reasoned decision]). The issue of the amount of reasonable attorney's fees the Board is entitled to recover is set down for an inquest on papers.

Accordingly, it is hereby

[* 5]

**ORDERED** that plaintiff's motion for a preliminary injunction is granted on the terms set forth in the August 2024 Order; and it is further

**ORDERED** that Wouter Deruytter is restrained and enjoined from: permitting anyone to sleep overnight in Unit 16PRO in the Building; creating a nuisance and/or source of annoyance to the Building's residents or interfering with the peaceful possession or proper use of the Building by its residents or occupants by engaging in any objectionable conduct including, but not limited to, causing excessive noise in the Units or the Building's common areas, loitering in the Building's common areas, including the lobby, and/or banging on doors; disobeying, threatening, harassing, and/or intimidating the Building's staff, including but not limited to, verbal abuse, threatening with weapons and/or causing physical harm in any way; and violating the By-Laws, the Building's Rules and Regulations, and applicable law; and it is further

**ORDERED** that plaintiff's motion for an order holding Wouter Deruytter in criminal contempt of the August 2024 Order, is denied without prejudice; and it is further

**ORDERED** that plaintiff's motion for an order holding Wouter Deruytter in civil contempt of the August 2024 Order, is granted; and it is further

**ORDERED** that plaintiff established that the August 2024 Order is a lawful order of the Court expressing an unequivocal mandate which has been and remains in full force and effect, that Wouter Deruytter had knowledge of the August 2024 Order, that Wouter Deruytter disobeyed the August 2024 Order, and that his disobedience of the August 2024 Order prejudiced plaintiff's rights; and it is further

**ORDERED** that Wouter Deruytter failed to present any competent evidence establishing a defense to his disobedience of the August 2024 Order, or tending to raise a question of fact on such defense; and it is further

**ORDERED** that as punishment for said civil contempt, plaintiff is entitled to reasonable attorney's fees and costs it incurred in filing its contempt motions (Motion Seq. 003 and 004), as determined by an inquest on the papers. Plaintiff shall file papers in support of its reasonable attorney's fees and costs via NYSCEF no later than June 30, 2025, and papers in opposition, if any, shall be served via NYSCEF no later than July 14, 2025.

**ORDERED** that the court has considered the parties' remaining contentions and finds them unavailing.

| | |
|---|---|
| **5/6/2025** | KATHLEEN WATERMAN-MARSHALL, |
| **DATE** | **J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**655761/2019   THE BOARD OF MANAGERS OF THE 7 METROTECH CONDOMINIUM vs.**                Page 6 of 6
**DERUYTTER, WOUTER**
**Motion No.  002 003 004**

[* 6]