OPINION OF THE COURT
W. Dennis Duggan, J.
Issues
The legal issue to be determined in this case is whether proof beyond a reasonable doubt is required in a Family Court contempt proceeding that alleges a violation of a custody order. If so, this would follow from the rule recently announced by the Second Department in Matter of Rubackin v Rubackin (62 AD3d 11 [2009]), which applied the reasonable doubt standard to violations of Family Court orders of protection. If so, this would be contrary to the well-established rule in the Third Department that the appropriate burden of proof in all Family Court violation proceedings is clear and convincing evidence (see Matter of Blaize F., 48 AD3d 1007 [2008]; Matter of Cobane v Cobane, 57 AD3d 1320 [2008]).
The factual issue to be resolved in this case is this: Did the father willfully violate the “sole custody” provision of the custody order by not administering to his 15-year-old daughter medicines that had been prescribed by the child’s doctor who was treating the child under the authority exercised by the mother as the sole custodian under the custody order? If there was a violation of the court order was it a civil or a criminal contempt?
Holdings
The court holds that a finding of criminal contempt in a Family Court proceeding, where a respondent is to be sentenced *672 to a period of incarceration and does not “hold the keys to the jail cell in his hands,” must be established by proof beyond a reasonable doubt. A finding of civil contempt may be established by the long existing clear and convincing evidence standard. This distinction is based on the Rubackin analysis which draws the bright line at the point where the contemnor either does or does not hold the keys to the jail cell in his hands. In a civil case he does. In a criminal case, he does not. This is fully consistent with the federal constitutional standard (see Mine Workers v Bagwell, 512 US 821 [1994]). This court finds that it must follow the Rubackin rule because that case establishes the use of proof beyond a reasonable doubt as a constitutional standard. The Third Department, on the other hand, in declaring the standard to be clear and convincing evidence, has established only a rule of evidence. It has never ruled on the constitutional question. A constitutional standard trumps a rule of evidence because article VI (cl 2) of the United States Constitution provides that “[t]his Constitution . . . shall be the supreme Law of the Land.”
Based on the findings of fact set forth below, the court holds that the mother has failed to prove beyond a reasonable doubt that the father committed a criminal contempt and also failed to prove by clear and convincing evidence that the father committed a civil contempt. In the alternative, the court also finds that the father was justified in his actions that can be said to have willfully violated the custody order.
Discussion of Law
In reaching the conclusions set forth in the findings of fact, the court was first required to resolve the burden of proof issues because the father was not put on notice in the pleadings as to whether he was being accused of a civil or criminal contempt. The father, after reading all three warnings in the mother’s order to show cause, could, not know what type of contempt he was being charged with. It is a core element of due process that a person has the right to be advised of the charges against him from which flow the penalties that may be imposed. This would involve, at a minimum fundamental level, advising the respondent whether the charges were civil or criminal (see Cooke v United States, 267 US 517 [1925]). Because the notices to the respondent were deficient in this regard, the court must review the burdens of proof required in both criminal and civil contempts. The court concludes, however, that as a matter of *673 constitutional due process, a contempt petition must put the respondent on notice of whether he is being accused of criminal or civil contempt.
The order to show cause filed by the mother contains three warnings in bold faced capital letters at the top of the order. With these three warnings, she set forth every notice and warning required by statute. However, none of the notices or warnings advised the respondent if he was being charged with a civil or criminal contempt. The first warning given was the familiar one required by section 756 of the Judiciary Law. “WARNING: YOUR FAILURE TO APPEAR IN COURT MAY RESULT IN YOUR IMMEDIATE ARREST AND IMPRISONMENT FOR CONTEMPT OF COURT.” The statute also requires that “[t]he application shall contain on its face a notice that the purpose of the hearing is to punish the accused for a contempt of court, and that such punishment may consist of a fine or imprisonment, or both” (id.). A plain reading of section 756 commands the conclusion that the law requires both a notice that comports with the requirements of that section of law and the specific warning it prescribes. The mother’s order to show cause met both of those mandates.
The third warning in the mother’s order to show cause is one that is found in the Family Court’s official forms (General Form 7a). That official form incorrectly states that a contempt of court carries a possible jail sentence of up to six months. However, Judiciary Law § 751 limits the punishment for criminal contempts to 30 days in jail unless a specific statute provides otherwise. In the Family Court Act, certain statutes do provide otherwise but not one that covers the circumstances of this case. Sentences of up to six months are authorized for violations of support orders (Family Ct Act § 454 [3] [a]), violations of family offense orders of protection (Family Ct Act § 846-a) and violations of orders of supervision in article 10 abuse and neglect proceedings (Family Ct Act § 1072 [b]). For all other willful violations of Family Court orders, the Judiciary Law would limit the punishment to 30 days — but only if it was a criminal contempt. In short, none of the warnings in the order to show cause specifically advised the father whether he was being accused of either a civil or criminal contempt. For these reasons, the court is constrained to analyze the evidence under both standards. (See Matter of Peer, 50 AD3d 1511 [2008] [which noted that the order failed to specify whether the respondent was punished for civil or criminal contempt].)
*674 The Second Department, in Rubackin, has ruled that as a matter of constitutional law, proof beyond a reasonable doubt is required to sustain a finding that a respondent has failed to obey a lawful order of the Family Court, when the remedy to be imposed is a fixed period of incarceration. The Third Department has established as a general rule that willful violations of Family Court orders must be based on the intermediate clear and convincing evidence standard. For example, in Matter of Blaize F. (48 AD3d 1007 [2008]), the Court approved that standard for violations of orders under Family Court Act article 10 in abuse and neglect cases, upholding a 90-day sentence. Family Court Act § 1072 permits a sentence of up to six months in jail for such a contempt. Blaize and Rubackin present exactly analogous situations and come to exactly opposite results with respect to burden of proof issues. The statutes under review in both cases authorized definite sentences which could not be shortened by any purging behavior by the respondent. Under ordinary circumstances, Blaize would establish a rule of law with Department-wide application that must be followed by all lower courts in the Department and, indeed, the state, if no other Department has issued a contrary rule (Mountain View Coach Lines v Storms, 102 AD2d 663 [1984]). The distinguishing factor here is that the Third Department, in its rulings on the burden of proof in violation proceedings, has set forth not a constitutional rule but merely a rule of evidence. The Third Department has never directly ruled on the question of the constitutionally required burden of proof in a violation proceeding. Rubackin now sets that rule on a statewide basis. Because a constitutional rule trumps a rule of evidence, this court must follow the Rubackin rule.
The Rubackin decision sets forth in great detail the wanderings of the Appellate Divisions in their pronunciations on the burdens of proof required in contempt proceedings and how often they confabulate those rules with the rules that govern the types of evidence that may be used to meet those burdens. In short, the appellate courts have often discarded precision when discussing the quality of the evidence versus the quantity of proof in contempt proceedings. The Third Department, in Blaize, has confessed to this Pollockesque tapestry of word formulations that have been used by the appellate courts to describe the evidentiary standards in Family Court violation proceedings.
In Rubackin, the Second Department was reviewing a violation of an order of protection. In that situation, Family Court *675 Act § 846-a specifically provides that a respondent may be incarcerated for up to six months upon a finding of a willful violation. Because that penalty is clearly punitive in nature, Rubackin held that proof beyond a reasonable doubt was required if jail time was to be imposed. In this case, where we are reviewing an alleged violation of a custody order, the Family Court Act does not state any specific penalty for a willful violation of the order. In such a situation, Family Court Act § 156 provides that “[t]he provisions of the judiciary law relating to civil and criminal contempts shall apply.”
Judiciary Law article 19 distinguishes between criminal and civil contempts. The difference is not always easy to discern— especially when violations of Family Court orders are concerned. A civil contempt is meant to compensate a wronged party for a respondent’s violation of a court order or to coerce the respondent to comply with that order. A criminal contempt “involves an offense against judicial authority and is utilized to protect the integrity of the judicial process and to compel respect for its mandates.” (Matter of Department of Envtl. Protection of City of N.Y. v Department of Envtl. Conservation of State of N.Y., 70 NY2d 233, 239 [1987]; see also Gompers v Bucks Stove & Range Co., 221 US 418 [1911].) Although Judiciary Law § 750 (A) (3) permits a court to punish as a criminal contempt a “[w]ilful disobedience to its lawful mandate,” it does not follow from that proposition that all willful disobedience to lawful mandates are criminal contempts. Judiciary Law § 753 (A) (1) also permits a court to punish as a civil contempt the same “disobedience to a lawful mandate of the court.” As noted in Rubackin, the best rule of thumb for distinguishing between criminal and civil contempts is that if the respondent “holds the keys to the jail cell in his hands,” then it is a civil contempt. Of course, the same act could be both a civil and a criminal contempt and, in many circumstances, a civil contempt may have more serious consequences than a criminal contempt. It is the finality of the punishment not the length of the imprisonment that makes the difference.
In Family Court, after a finding of willfulness, a respondent would be entitled to a dispositional hearing to determine what remedies or sanctions would be appropriate. This is similar to a sentencing hearing in criminal court. There is, however, an important difference between cases prosecuted in civil court and those prosecuted in criminal court. In criminal cases, it is the risk of punishment going into the prosecution that determines
*676 whether a person would be entitled to a jury trial (Frank v United States, 395 US 147 [1969]). For example, a judge could not deprive a person of a jury trial by announcing up front that, in no case, would the defendant be sentenced to more than six months in jail. This is the demarcation point in this state for jury trials in the City of New York (CPL 340.40 [2]; see also Lewis v United States, 518 US 322 [1996]; Matter of Morgenthau v Erlbaum, 59 NY2d 143 [1983]). In any event, in criminal cases, proof beyond a reasonable doubt is required for all levels of offenses, regardless of the sentence (see CPL 300.10 [2]; 320.20 [4]). Despite the rule in criminal cases, it is this court’s reading of Rubackin that the burden of proof is not fixed going into a Family Court violation proceeding. Rubackin holds that for a fixed period of incarceration to be imposed, the evidence must convince the court beyond a reasonable doubt. If the proof only meets a clear and convincing standard, then other sanctions, short of incarceration that cannot be purged by the respondent, may still be imposed. “That same standard [proof beyond a reasonable doubt] is not applicable if one or more of the other available remedies ... is utilized” (Rubackin, 62 AD3d at 13).
Findings of Fact
The evidence in this case supports a finding beyond all doubt that the father intentionally declined to follow the treatment plan directed by his daughter’s pediatrician. That refusal consisted of his lowering the dosage of certain medicines that were prescribed for his child and declining to give her others. The court finds, however, that the father’s actions were made in good faith and had a sound and objective basis. This raises a valid defense to a claim that he willfully violated the court order. It also creates a reasonable doubt as to whether the father possessed the specific intent that would support a finding of criminal contempt. The deficiency of the evidence also prevents this court from concluding clearly and convincingly that the father willfully violated the “sole custody” provision of the court order in a way that would support a finding of civil contempt.
The father is a child psychiatrist. Accordingly, he possesses a medical degree and license. This provides him with the educational background and professional training to possess a good understanding of his daughter’s medical condition. This is bolstered by the fact that in the course of his work, he treats similarly situated children. His knowledge of his daughter’s *677 condition was also supported by his self-study of her condition and consultation with his brother who is a board certified ENT doctor.
At the time his daughter came to stay with him, the father was able to directly observe his child. Based on those observations and his judgments as a father and medical doctor, he had a good faith basis for disagreeing with the treatment regimen directed by his daughter’s doctor. He concluded that the treatment was too aggressive and that the prescription strengths were too powerful. The court concludes that the evidence supports a finding that the father possessed a good faith basis for disregarding the doctor’s instructions and, derivatively, the mother’s authority as sole custodian. This finding is analogous to one that might be made where the justification defense is permitted by the Penal Law. In other words, the father had a reasonable belief to conclude that the harm to his daughter that could be caused by administering the medicines as prescribed outweighed the harm that would result by his disregarding the mother’s custodial authority.
The father’s testimony established that after his daughter came to his house, the conditions that gave rise to the treatment plan by the child’s doctor started to abate. As a parent, directly observing his child’s condition, and possessing relevant medical knowledge, the father was, under the circumstances, justified in varying from the child’s treatment plan. While it is the general principle that the custodial parent possesses the sole authority to make medical decisions for her child, this does not relegate a noncustodial parent to the status of a potted plant. The parent then caring for a child also has a residual authority to make decisions in the child’s best interest that are called for by the immediate circumstances — even if those decisions might overlap with or intrude upon the other parent’s “sole custody” authority.
The court finds that in this case the father made such a justifiable parental decision. As it turned out, no harm was done to the child by the father changing the medicinal regimen and, in fact, the improvement of his daughter’s condition while she was with him is some evidence that he was right and the doctor was wrong. On the other hand, the child may have had the same results had she taken the medicines as prescribed or improved faster — but no one knows. The court is not making a finding that the father made a medically correct decision, only that he was reasonably justified in the decision that he made to the *678 extent that he cannot be found to have committed a criminal or civil contempt.
In this case, the father was presented with a medicine regimen for his daughter that he partially ignored. Did this “defeat, impair, impede or prejudice” a right of the mother? (The language used in Judiciary Law § 753 [A] to describe a civil contempt.) As the sole custodian, the mother surely would have the right to direct the medical care of her daughter and, in the circumstances of this case, she had done so by adopting the plan recommended by her child’s doctor. In the larger scheme of things, however, this was a very short term event. To some degree, the father’s actions did impair the right of the mother to have full control over her daughter’s care, but any impairment of the mother’s authority, under the totality of circumstances, was de minimis. A custody order is not meant to be a sword of Damocles hanging over the head of a noncustodial parent who makes an emergency decision in good faith.
The court finds that in this case, the mother has not proved that the father committed either a criminal or a civil contempt. As for a criminal contempt, she has failed to carry her burden to prove beyond a reasonable doubt that the father willfully violated the “sole custody” provision of the custody order in a way that involves an offense against judicial authority. As for a civil contempt, the court finds that the mother has proved by clear and convincing evidence that her rights under the custody order were “defeated, impaired, impeded, or prejudiced,” but only in a minor way and that the father was justified in his actions. For these reasons, the mother’s petition is dismissed.