[875 NYS2d 90]

In the Matter of Sheila Rubackin et al., Respondents, v Robert Rubackin, Appellant.

Second Department, February 24, 2009

**APPEARANCES OF COUNSEL**

*DePodwin & Murphy*, Nanuet (*Phillip J. Murphy* of counsel), for appellant.

*Patricia Zugibe, County Attorney*, New City (*Barbara M. Wilmit* of counsel), for Rockland County Department of Probation, respondent.

**OPINION OF THE COURT**

ANGIOLILLO, J.

The appeal in this family offense proceeding raises the question of what standard of proof is necessary to sustain a finding that a respondent has failed to obey a lawful order of the Family Court, when the remedy to be imposed is a period of incarceration pursuant to Family Court Act § 846-a. It is appropriate to address this question notwithstanding the fact that the period of incarceration imposed on the appellant, Robert Rubackin, has expired, and thus, the appeal from that portion of the order must be dismissed. Although the period of the appellant's incarceration has expired, the appeal from so much of the order as found that he violated a temporary order of protection is not academic in light of the enduring consequences which

may potentially flow from an adjudication that a party has been found to have violated an order of the Family Court (*see Matter of Er-Mei Y.*, 29 AD3d 1013 [2006]).

■ The provisions of Family Court Act article 8, governing family offense proceedings, do not specify the standard of proof that must be met in order to sustain a finding that an individual failed to obey a lawful order issued under that article. Family Court Act § 846-a refers to the remedial steps that may be taken when, after a hearing, "the court is satisfied by competent proof that the respondent has willfully failed to obey any such order." "[C]ompetent proof" references the nature and quality of the proof required, but it does not answer the question of what quantum of proof is required. The question of the proper standard of proof is complicated by the nature of the various remedies available to a Family Court judge upon finding that an individual has failed to obey a lawful order.

Most of the remedies provided for in Family Court Act § 846-a are clearly civil in nature. When those remedies are implemented, they assist in stopping the violence, ending family disruption, and providing protection to a party. Like the remedies that are clearly civil in nature, the imposition of a period of commitment to jail may have a certain coercive effect of compelling future compliance by an individual, but it is mainly punitive in nature, imposed to punish an individual for past disobedience.

We conclude that the standard of proof which must be met when the court commits an individual to a jail term is proof beyond a reasonable doubt that he or she willfully failed to obey a lawful order of the court. That same high standard is not applicable if one or more of the other available remedies under Family Court Act § 846-a is utilized and a jail term is not imposed.

Family Court Act § 812 (2) (b) provides, in part: "[t]hat a family court proceeding is a civil proceeding and is for the purpose of attempting to stop the violence, end the family disruption and obtain protection."

Upon the filing of a petition alleging one or more family offenses, as specified in Family Court Act § 821, the court conducts a fact-finding hearing to determine whether the allegations of the petition are supported by a fair preponderance of the evidence (*see* Family Ct Act § 832). If the allegations of the petition are supported by a fair preponderance of the evidence, one of the actions the court may take at the conclusion of a disposi-

tional hearing is to issue an order of protection (*see* Family Ct Act § 841 [d]). Another is the placement of the respondent on probation for a period not exceeding one year (*see* Family Ct Act § 841 [c]). Commitment to a period of incarceration, however, is not authorized under Family Court Act § 841 at that stage of the proceeding.

The Family Court in this case initially found, after a hearing, that the appellant had committed the family offense of harassment in the second degree. The court imposed a one-year period of probation and issued an order of protection. One of the conditions of the order of protection was that the appellant attend domestic violence classes for a period of one year. While that order of protection was in effect, a violation petition was filed by the Rockland County Department of Probation (hereinafter the Probation Department). Due to certain deficiencies in the Probation Department's proof on the issue of whether the appellant was discharged from the domestic violence classes for cause, that violation petition was not sustained. However, the court noted that it was undisputed that the appellant was not attending domestic violence classes. The Family Court issued another temporary order of protection dated August 11, 2006 (hereinafter the August 11 order of protection) and, subsequently, a permanent order of protection dated October 13, 2006, both of which required the appellant to register in and attend domestic violence classes.

A second violation petition was thereafter filed alleging that the appellant failed to attend a registration meeting for the program, failed to reschedule the registration meeting, and failed to attend domestic violence classes. A hearing was conducted on that violation petition. The testimony of two witnesses, a senior probation officer and an individual who was a court liaison with a volunteer counseling program, was offered to establish the appellant's willful noncompliance with the August 11 order of protection. The appellant testified that he did not remember why he had missed the registration meeting.

After the hearing, the Family Court found, by clear and convincing evidence, that the appellant willfully failed to comply with the August 11 order of protection. The court issued a new order of protection, with a two-year duration, and committed the appellant to a period of incarceration of 30 days. As noted, the appellant has completed the period of commitment. This appeal ensued.

The enforcement of an order of protection may be pursued by the filing of a violation petition alleging a failure to obey the or-

der of protection (*see* Family Ct Act § 846). Family Court Act § 846-a provides, in part: "if, after hearing, the court is satisfied by *competent proof* that the respondent has willfully failed to obey any such order" (emphasis added), it may take one or more specified actions. The court may: (1) add reasonable conditions of behavior to the existing order of protection; (2) make a new order of protection in accordance with Family Court Act § 842; (3) forfeit bail in a manner consistent with article 540 of the Criminal Procedure Law; (4) order the respondent to pay the petitioner's reasonable and necessary counsel fees; and (5) "may commit the respondent to jail for a term not to exceed six months" (Family Ct Act § 846-a).

Although the statute requires "competent proof," it does not specify what standard of proof a petitioner must meet in establishing a willful failure to obey the court's order of protection.

The failure to obey a lawful order of a court is a species of contempt. A contempt of court ultimately may constitute a criminal contempt, a civil contempt, or both a criminal and a civil contempt. A period of incarceration may be imposed upon a finding of either a criminal or civil contempt. When a period of incarceration is imposed, what distinguishes a criminal contempt from a civil contempt is, in part, the purpose for which the incarceration is imposed. When the purpose of committing an individual to jail is in the nature of vindicating the authority of the court, protecting the integrity of the judicial process, or compelling respect for the court's mandates, the contempt is a criminal contempt. In order to sustain a finding of criminal contempt, there must be proof beyond a reasonable doubt that the contemnor willfully failed to obey an order of the court.

We arrive at the conclusion that the contempt finding in this case was criminal in nature, requiring that the proof of such willful disobedience of the court's order be made beyond a reasonable doubt, by first looking to the language of a nearly century-old decision of the United States Supreme Court. In *Gompers v Bucks Stove & Range Co.* (221 US 418 [1911]), the Supreme Court stated the following:

> "Contempts are neither wholly civil nor altogether criminal. And 'it [might] not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both' . . . It is not the fact of punishment

but rather its character and purpose that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. . . . [I]mprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order" (*id.* at 441-442 [citation omitted]).

The Supreme Court in *Gompers* gave an example where a defendant is ordered to do something, refuses, and is committed to a jail term after being found in contempt. It stated that this is an example of civil contempt, where the individual remains committed only until he does what he previously refused to do, thereby purging the contempt (*id.*). In that regard the civil contemnor is said to hold the keys to the prison. An example would be a parent who has been found to have willfully failed to pay child support and is incarcerated; the contempt is purged and the individual is released from custody with the payment of the amount that was determined to be owed.

In *Gompers*, the Supreme Court then contrasted the example of civil contempt with a situation where the contempt is criminal:

"On the other hand, if the defendant does that which he has been commanded not to do, the disobedience is a thing accomplished. Imprisonment cannot undo or remedy what has been done nor afford any compensation for the pecuniary injury caused by the disobedience. If the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. Such imprisonment operates, not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience . . .

"The distinction between refusing to do an act commanded,—remedied by imprisonment until the party performs the required act; and doing an act forbidden,—punished by imprisonment for a definite term; is sound in principle, and generally, if not universally, affords a test by which to determine the character of the punishment" (*id*. at 442-443).

The Supreme Court then set forth a defendant's rights in the criminal contempt situation. "Without deciding what may be the rule in civil contempt, it is certain that in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty *beyond a reasonable doubt*, and [he] cannot be compelled to testify against himself" (*id*. at 444 [emphasis added]).

The necessity of proving a criminal contempt beyond a reasonable doubt was reiterated by the Supreme Court in *Michaelson v United States ex rel. Chicago, St. P., M. & O. R. Co.* (266 US 42 [1924]). In that decision the Court also stressed that in a criminal contempt case "the dominating purpose of the proceeding . . . is punitive to vindicate the authority of the court and punish the act of disobedience as a public wrong" (*id*. at 65).

That same purpose for a criminal contempt finding was stated by our Court of Appeals. "A criminal contempt . . . involves an offense against judicial authority and is utilized to protect the integrity of the judicial process and to compel respect for its mandates" (*Matter of Department of Envtl. Protection of City of N.Y. v Department of Envtl. Conservation of State of N.Y.*, 70 NY2d 233, 239 [1987] [citation omitted]).

When the period of commitment is imposed for a definite term, to protect the integrity of the judicial process, without the possibility of shortening that term by purging the contempt, the contempt is criminal. It is criminal notwithstanding that the disobedience was a failure to do something the individual was directed to do. Here, the appellant did not do what he had been ordered to do and he was committed to jail for a definite term without the possibility of purging the contempt. The commitment was made to compel respect for the court's mandates and to vindicate the authority of the court. Thus, in accordance with the Supreme Court's precedents in *Gompers* and *Michaelson*, and the Court of Appeals' precedent in *Matter of Department of Envtl. Protection of City of N.Y.*, the imposition of a term of incarceration upon the appellant was criminal in nature.

In an analogous situation, this Court held in *Dalessio v Kressler* (6 AD3d 57 [2004]), that a bank could be subject to

criminal contempt for defying a court order. In an opinion by then-Justice Goldstein, the distinction between civil and criminal contempt was discussed:

> "Civil contempt (*see* Judiciary Law § 753) 'has as its aim the vindication of a private party to litigation' and includes as its elements knowledge of the order and prejudice to the rights of a party to the litigation . . .
>
> "The purpose of criminal contempt (*see* Judiciary Law § 750) is to vindicate the authority of the court. No showing of prejudice to the rights of a party to the litigation is needed 'since the right of the private parties to the litigation is not the controlling factor'. . .
>
> "An essential element of criminal contempt is willful disobedience (*see* Judiciary. Law § 750 [3])" (*Dalessio v Kressler*, 6 AD3d at 65-66 [citations omitted]).

The question of whether a contempt finding under Family Court Act §§ 846 and 846-a, which results in a commitment to jail for a definite term, is a "criminal" contempt was answered, in all respects save name only, by the Court of Appeals in *People v Wood* (95 NY2d 509 [2000]). The question presented to the Court of Appeals in *Wood* was whether a defendant could be prosecuted for criminal contempt in the first degree, pursuant to Penal Law § 215.51 (c), after having been previously prosecuted for contempt under Family Court Act article 8. The Court held that such prosecution was barred by the provisions of double jeopardy. In the course of the decision the Court addressed the nature of a finding of contempt under Family Court Act article 8. The Court stated:

> "The People conceded below (as acknowledged by the Appellate Division) that a finding of contempt pursuant to Family Court Act article 8 is punitive in nature, triggering double jeopardy protections. We concur with that concession. We have recognized that despite the 'civil' legislative label (*see*, Family Ct Act § 812 [2] [b]), section 846-a, which provides for a penalty of incarceration for violation of Family Court orders, is punitive in nature (*see, Matter of Walker v Walker*, 86 NY2d 624, 629 . . . ; *see also, People v Arnold*, 174 Misc 2d 585, 590-591). An

adjudication for contempt under article 8 is properly characterized as punitive because it does not seek to coerce compliance with any pending court mandate, but rather imposes a definite term of imprisonment and punishes the contemnor for disobeying a prior court order" (*People v Wood*, 95 NY2d at 513, n 3).

While the Court of Appeals did not specifically refer to the contempt under Family Court Act § 846-a as "criminal," its description of the finding as punitive in nature for disobeying a prior court order fits the analysis of a criminal contempt set forth by the United States Supreme Court in *Gompers*, and by this Court in *Dalessio* (*see also New York City Tr. Auth. v Transport Workers Union of Am., AFL-CIO*, 35 AD3d 73, 86 [2006]; *People v Arnold*, 174 Misc 2d 585, 590-591 [1997]).

This Court and the Court of Appeals have held in the context of labor actions that a criminal contempt has to be proven beyond a reasonable doubt (*see County of Rockland v Civil Serv. Empls. Assn.*, 62 NY2d 11 [1984]; *Yorktown Cent. School Dist. No. 2 v Yorktown Congress of Teachers*, 42 AD2d 422 [1973]). Proof beyond a reasonable doubt was also the standard held to be applicable in proceedings to hold an individual in criminal contempt for failure to produce books and records in response to a grand jury subpoena (*see Matter of Kuriansky v Azam*, 176 AD2d 943 [1991]; *see also Matter of Gold v Valentine*, 35 AD2d 958 [1970]). Proof beyond a reasonable doubt was also the standard that was applicable on an application to hold an individual in criminal contempt for violation of a temporary injunction (*see Matter of Jones [McKanic]*, 160 AD2d 870 [1990]). In a recent case, this Court held that proof of guilt had to be established beyond a reasonable doubt in the context of a motion to hold defendants in criminal contempt for their alleged failure to comply with a judgment (*see Muraca v Meyerowitz*, 49 AD3d 697 [2008]). There is no plausible reason or basis to apply a standard to an individual who violates an antistrike or other injunction, or who fails to comply with a command to produce records, or who fails to comply with a judgment, that is different from that applied to the individual who willfully violates an order of protection issued pursuant to Family Court Act article 8.

Our holding today changes the standard of proof previously found to be applicable under Family Court Act § 846-a by this Court and by other departments of the Appellate Division. In the specific context of contempt for a violation of a court order

issued under Family Court Act article 8, this Court and other appellate courts have issued conflicting decisions on what the relevant standard of proof should be in such proceedings.

In an earlier case, this Court held that the standard of proof in a contempt proceeding under Family Court Act article 8 was clear and convincing evidence (*see Matter of Williams v Williams*, 230 AD2d 916 [1996]). Part of the analysis in that case was that proceedings under the Family Court Act are essentially civil in nature (*id.*). However, after the subsequent decision in *People v Wood* (95 NY2d 509 [2000]), that analysis does not hold.

More recently, this Court referenced the standard of proof as being a fair preponderance of the evidence (*see Matter of Hijri v Fargaly*, 49 AD3d 737 [2008]; *Matter of Sarmuksnis v Priest*, 21 AD3d 381 [2005]). In *Matter of Hijri,* this Court cited to a decision of the Appellate Division, Third Department in *Matter of Tina T. v Steven U.* (243 AD2d 863 [1997]), without referencing or distinguishing *Matter of Williams v Williams* (230 AD2d 916 [1996]), for the holding that the standard of proof was a fair preponderance of the evidence. In *Matter of Tina T.*, the Third Department made reference to Family Court Act § 832 in support of the holding that the standard of proof was a fair preponderance of the evidence. Family Court Act § 832, however, as noted above, relates to the standard applicable to the original issuance of an order of protection, not to the standard on a subsequent willful violation of an order of protection that has already been issued. With citations to *Matter of Tina T.*, the Third Department has reiterated the standard as being a fair preponderance of the evidence (*see Matter of Eisele v Eisele*, 307 AD2d 412 [2003]; *Matter of Nikole B.*, 263 AD2d 622 [1999]). In a recent decision involving willful violation of a prior order of disposition and a prior order of protection entered in a proceeding pursuant to Family Court Act article 10, where the father was sentenced to a 90-day period of incarceration, the Third Department held that "the proper standard for establishing a willful violation of a Family Court order is clear and convincing evidence" (*Matter of Blaize F.*, 48 AD3d 1007, 1008 [2008]). With a citation to *Matter of Tina T.*, the Appellate Division, Fourth Department has also referenced the standard as a fair preponderance of the evidence (*see Matter of Kimberly A.K. v Ronald F.G.*, 266 AD2d 835 [1999]).

This Court has also sustained holdings of contempt, that resulted in incarceration, with just a reference to the statutory

language of "competent proof" (*Matter of Lippmann v Lippmann*, 239 AD2d 346, 347 [1997]; *Matter of Louvaris v Louvaris*, 209 AD2d 524 [1994]; *Matter of Lentino v Lentino*, 185 AD2d 849 [1992]). However, as noted, "competent proof" describes the nature of the evidence rather than the quantum necessary to sustain a determination of a willful violation that results in incarceration.

In contrast to the cases that referenced a lesser standard, in a case where the respondent was found to have committed 10 violations of orders of protection, the Appellate Division, First Department clearly treated the matter as one for criminal contempt with a standard of proof of beyond a reasonable doubt (*see Matter of Dyandria D.*, 22 AD3d 354 [2005]). The court referenced the violations as having been established beyond a reasonable doubt and held that the respondent was not entitled to a jury trial as the maximum exposure under Family Court Act § 846-a was six months.

When an individual is incarcerated as a punitive remedy for violating an order of protection issued under Family Court Act article 8, the proceeding is one involving criminal contempt. The standard of proof that must be met to establish that the individual willfully violated the court' s order is beyond a reasonable doubt. That higher standard, as opposed to the clear and convincing standard, is the requisite standard.

The prior decisions of this Court, in cases where the respondent has been committed to a term in jail pursuant to Family Court Act § 846-a, holding that the standard of proof is one of the lesser standards, should no longer be followed.

A commitment to jail for a term not to exceed six months is only one of the five alternative, or cumulative, remedies the Family Court may impose pursuant to Family Court Act § 846-a when it is satisfied that a party has willfully failed to obey the court's order or orders. When an order committing a respondent to a jail term is issued, either alone or in combination with another remedy, the commitment is punitive, to punish the individual for his or her disobedience, and the standard of proof is beyond a reasonable doubt.

As a petition alleging that a respondent has failed to obey a lawful order of the court may result in a finding of criminal contempt, civil contempt, or both criminal and civil contempt (*see Matter of McCormick v Axelrod*, 59 NY2d 574, 583 [1983]), the parties should be informed of the potential findings and the applicable standards of proof (*see Yacht Shares v Knutson's*

*Marina*, 112 AD2d 419 [1985]; *Matter of Drimmer*, 97 AD2d 792, 793 [1983]; *see also Hero Boy, Inc. v Dell'Orto*, 306 AD2d 226 [2003]).

Here, the Family Court erred in finding, by clear and convincing evidence, that the appellant willfully failed to obey the August 11 order of protection. It should have used the higher standard of proof of beyond a reasonable doubt. Upon our review of the record, however, we find that the proof submitted at the hearing was sufficient to establish, beyond a reasonable doubt, that the appellant willfully failed to obey the August 11 order of protection issued by the Family Court.

The appellant's remaining contentions are either without merit or not properly before this Court.

Accordingly, the appeal from so much of the order dated July 30, 2007 as committed the appellant to a period of incarceration of 30 days is dismissed as academic and the order dated July 30, 2007 is modified, on the law, by deleting the provision thereof finding, by clear and convincing evidence, that the appellant violated a temporary order of protection dated August 11, 2006 and substituting therefor a provision finding, beyond a reasonable doubt, that the appellant violated a temporary order of protection dated August 11, 2006; as so modified, the order dated July 30, 2007 is affirmed insofar as reviewed.

Skelos, J.P., Leventhal and Belen, JJ., concur.

Ordered that the appeal from so much of the order dated July 30, 2007 as committed the appellant to a period of incarceration of 30 days is dismissed as academic, without costs or disbursements; and it is further,

Ordered that the order dated July 30, 2007 is modified, on the law, by deleting the provision thereof finding, by clear and convincing evidence, that the appellant violated a temporary order of protection dated August 11, 2006 and substituting therefor a provision finding, beyond a reasonable doubt, that the appellant violated a temporary order of protection dated August 11, 2006; as so modified, the order dated July 30, 2007 is affirmed insofar as reviewed, without costs or disbursements.