Matter of DeSiena v DeSiena (2018 NY Slip Op 08931)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

Matter of DeSiena v DeSiena

2018 NY Slip Op 08931

Decided on December 26, 2018

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 26, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department
LEONARD B. AUSTIN, J.P.
SHERI S. ROMAN
ROBERT J. MILLER
VALERIE BRATHWAITE NELSON, JJ.


2018-02047
(Docket Nos. O-6173-16, O-6173-16/17A, O-6173-16/17B)

[*1]In the Matter of Abigail DeSiena, respondent, 
vJames M. DeSiena, appellant.

Joseph Petito, Poughkeepsie, NY, for appellant.
Del Atwell, East Hampton, NY, for respondent.

DECISION & ORDER
In a family offense proceeding pursuant to Family Court Act article 8, James M. DeSiena appeals from an order of the Family Court, Dutchess County (Joseph A. Egitto, J.), dated January 24, 2018. The order, after a fact-finding hearing, found that he had committed two violations of a temporary order of protection dated April 14, 2017, directed the issuance of a permanent order of protection, and directed that he be incarcerated for a period of six months for each violation.
ORDERED that the order is affirmed, without costs or disbursements.
In this family offense proceeding pursuant to Family Court Act article 8, the Family Court entered a temporary stay-away order of protection dated April 14, 2017 (hereinafter the temporary order of protection), which directed James M. DeSiena (hereinafter the husband) to refrain from any communication with the petitioner (hereinafter the wife) and directed the husband to stay at least 500 feet away from the wife, her home, and her place of employment. The wife subsequently filed a petition alleging that the husband violated the temporary order of protection. The wife sought, inter alia, a permanent order of protection.
The Family Court conducted a fact-finding hearing. During the hearing, the husband testified about certain matters, but invoked his Fifth Amendment privilege against self-incrimination in response to some of the questions posed by the wife's attorney. The evidence at the hearing also included the testimony of a nonparty witness who observed the husband, the day after the defendant was served with the temporary order of protection, posting a flyer, which contained disparaging remarks about the wife, 15 feet away from the wife's place of employment. Other evidence showed that the husband sent a letter to the wife in which he stated that he had a "special offer" for her, but that she would need to telephone him to hear the details.
In the order appealed from, the Family Court determined, beyond a reasonable doubt, that the husband willfully violated the temporary order of protection by (1) failing to stay at least 500 feet away from the wife's place of employment, and (2) failing to refrain from communication with the wife. The court issued a permanent order of protection and directed that the husband be incarcerated for a period of six months for each of those violations, the periods of incarceration to [*2]run concurrently. We affirm.
"The failure to obey a lawful order of a court is a species of contempt" (Matter of Rubackin v Rubackin, 62 AD3d 11, 15). "A contempt of court ultimately may constitute a criminal contempt, a civil contempt, or both a criminal and a civil contempt" (id. at 15). The Family Court is explicitly authorized to sanction an individual for both criminal and civil contempt (see Family Ct Act § 156). Upon finding that an individual willfully failed to obey a temporary order of protection, the Family Court "may commit the [contemnor] to jail for a term not to exceed six months" (Family Ct Act § 846-a).
Generally, "[w]hen the period of commitment is imposed for a definite term, to protect the integrity of the judicial process, without the possibility of shortening that term by purging the contempt, the contempt is criminal" (Matter of Rubackin v Rubackin, 62 AD3d at 17). Where, as here, "an individual is incarcerated as a punitive remedy for violating an order of protection issued under Family Court Act article 8, the proceeding is one involving criminal contempt" (id. at 21). "In order to sustain a finding of criminal contempt, there must be proof beyond a reasonable doubt that the contemnor willfully failed to obey an order of the court" (id. at 15).
Contrary to the husband's contention, the Family Court utilized the appropriate standard of proof in concluding that the evidence established his criminal contempt: proof beyond a reasonable doubt (see County of Rockland v Civil Serv. Empls. Assn., 62 NY2d at 14). Contrary to the husband's further contention, the evidence adduced at the hearing was sufficient to demonstrate, beyond a reasonable doubt, that he willfully violated the temporary order of protection on two separate occasions by failing to stay at least 500 feet away from the wife's place of employment and by failing to refrain from communication with the wife (see Family Ct Act § 846-a; Matter of Solomon v Fishman, 162 AD3d 1051, 1052; Rosenstock v Rosenstock, 149 AD3d 887, 889). Upon the exercise of our factual review power, we conclude that the court's determination was supported by the weight of the evidence.
The husband also contends that the Family Court improperly drew a negative inference from his assertion of his Fifth Amendment right against self-incrimination at the fact-finding hearing. The husband is correct that the court was not entitled to draw a negative inference from the invocation of his Fifth Amendment privilege against self-incrimination, as the proceeding was criminal and not civil in nature (see Baxter v Palmigiano, 425 US 308, 318; People v Wood, 95 NY2d 509, 515; Matter of Rubackin v Rubackin, 62 AD3d at 21). However, although the court indicated during the fact-finding hearing that it intended to draw a negative inference from the husband's assertion of his Fifth Amendment privilege, the record shows that it did not ultimately do so. Indeed, the fact-finding section of the order appealed from made no reference to any negative inference and the husband does not contend otherwise. Rather, the court's factual determinations were premised on the testimony of the nonparty witness and the other evidence adduced at the hearing. Since the record demonstrates that the court did not draw a negative inference based on the husband's assertion of his Fifth Amendment privilege, the husband's contention that the court violated his Fifth Amendment right against self-incrimination is without merit (see Matter of Miller v Pederson, 121 AD3d 1598, 1599; see also Matter of Emily I., 50 AD3d 1181, 1182).
The husband's remaining contention is without merit.
AUSTIN, J.P., ROMAN, MILLER and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court