J.N. v T.N. (2024 NY Slip Op 51017(U))

[*1]

J.N. v T.N.

2024 NY Slip Op 51017(U)

Decided on August 7, 2024

Supreme Court, New York County

Waterman-Marshall, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 7, 2024
Supreme Court, New York County

J.N., Plaintiff,

against
T.N., Defendant.

Index No. XXXXXX/2018

The Plaintiff-Wife is represented by Teitler & Teitler, LLP, Jaime Weiss, Esq. and Nicholas Lobenthal, Esq., 230 Park Avenue, Suite 2200, New York, New York 10169, (212) 930-3607. 
The Defendant-Husband, T.N. appeared both as a self-represented party, and has a retained attorney, Sipsas PC, Ioannis P. Sipsas, Esq., 3116 30th Avenue, Suite 201, Astoria, New York 11102, (718) 777-0909. 

Kathleen Waterman-Marshall, J.

INTRODUCTION: BRIEF BACKGROUND
This is a post-judgment divorce action, the matter having been concluded by way of entry of Judgment of Divorce on January 9, 2023 ("the JOD") following a custody trial in 2020 and financial trial in 2022. The proof at both trials established that during the marriage, defendant T.N. ("Husband") abused plaintiff J.N. ("Wife") and the parties' three children and engaged in conduct that constituted domestic violence within the meaning of Social Services Law § 459-a. Post-commencement, Husband refused to speak with Wife except through her attorneys, impeding effective co-parenting and causing harm to the children. He also engaged in a campaign of harassment against Wife and sought to ruin her professional reputation and career by disclosing her confidential employment records in violation of court order.
In September of 2022, this Court noted in its decision on the financial trial (J.N. v T.N., 77 Misc 3d 894 [Sup Ct, New York County 2022]) that this is one of the unfortunate cases in which "the end of the marriage does not mark the end of the abuse." Indeed, the Court predicted that, given Husband's "abject refusal to follow Court orders, and inability to honor even his own agreement, and in view of the recognized principle that a person's future behavior is best predicted by his past conduct, it is entirely reasonable to conclude" he will continue to disclose Wife's confidential information and documents even after entry of the JOD "in an attempt to harm" her. The Court's predictions were sadly correct.
In October 2023, the case came back on Wife's emergency motion to address troubling [*2]issues with the children caused by Husband's refusal to speak to and co-parent with her. The motion came on for an initial appearance on November 6, 2023, at which both parties appeared with counsel and submitted papers, and alleged an emergency — specifically, the parties' oldest child said that he was thinking of suicide and "30%" on the way to doing it. Wife sought a temporary suspension of Husband's unsupervised parenting time ("the Modification Motion"). The Court issued four orders appointing various third-party professionals (a neutral intermediary; an Attorney for the Children ["AFC"]; a forensic evaluator; and Comprehensive Family Services ["CFS"]) to assist the family and provide insight into the facts and circumstances in order for the Court to determine the solution that is in the best interests of the children.
The Modification Motion also gave rise to Husband's motion for attorney's fees and Wife's cross-motion for an order finding Husband in civil and criminal contempt of several court orders. In an Interim Decision and Order dated February 5, 2024, the Court found Husband to be in civil contempt, pursuant to Judiciary Law § 753, of the subject orders, and scheduled a hearing on the issue of his alleged criminal contempt, pursuant to Judiciary Law § 750, for February 29, 2024. The Court appointed Husband an 18B attorney to represent him at the criminal contempt hearing given his newly claimed self-represented status (Husband was represented by two separate attorneys in November 2023 and paid one of them over $40,000; according to NYSCEF, he continues to be represented by one of the attorneys). The Court advised Husband that if he failed to appear on February 29, 2024 for the criminal contempt hearing, a warrant would be issued for his arrest.
For the reasons set forth at length below, it took over four and one-half months to get to the criminal contempt hearing, which finally occurred on July 18, 2024. What follows are the findings and conclusions on that hearing.
In summary, Wife established, beyond a reasonable doubt, that Husband is guilty of criminal contempt, pursuant to Judiciary Law § 750 (3), for: (1) his willful disobedience, on three separate occasions, of the orders dated March 15, 2019, August 23, 2022, September 15, 2022, which prohibit him from disclosing Wife's confidential documents to the public; (2) his willful disobedience of the order dated April 2022, which requires him to speak to Wife via Our Family Wizard ("OFW") or a neutral intermediary; and (3) his willful disobedience of the orders dated November 6, 2023, November 8, 2023, and November 14, 2023, which directed him to pay third-party professionals for work related to the custody issues in this matter. For each one of the five separate violations, Husband is sentenced, pursuant to Judiciary Law § 751 (1), to 30 days in jail, for a total sentence of 150 days in jail.

CRIMINAL CONTEMPT HEARING
On July 18, 2024, starting at 11:00 a.m., the Court conducted the criminal contempt hearing. Wife appeared with her attorneys. Husband failed to appear although the Court provided him notice of the date and time of the hearing, an opportunity to appear with an attorney of his own choosing and present a defense, together with the requisite Parker warnings that if he failed to appear on July 18, his absence would not prevent the hearing from going forward or the imposition of a sentence if criminal contempt were found (People v Parker, 57 NY2d 136 [1982]). The Court also had present in Court an 18B attorney in the event that Husband appeared and demonstrated indigence.
At the start of the hearing, the Court took judicial notice of "all of the orders that are relevant" and, in addition, introduced into evidence the following sixteen exhibits offered by [*3]Wife:
1: Confidentiality Stipulation, So-Ordered on March 15, 2019 ("the March 2019 Confidentiality Order"), which specifically and expressly deems confidential any information and documents relating to Wife's employment with Goldman Sachs and prohibits the "public disclosure" of such documents and information, as well as their disclosure to anyone other than the parties, or their respective attorneys and experts in this litigation;
2: Decision and Order, dated August 23, 2022, in which the Court, inter alia, granted Wife's motion for an injunction and specifically restrained and enjoined Husband from further deliberately disclosing documents and information covered by the March 2019 Confidentiality Order "to any third party" (Motion Seq. 10).[FN1]The Court also specifically found that a private evaluation report prepared about Wife's work by her supervisors at Goldman Sachs, called the "Silvestri Report," was a document within the protection of the March 2019 Confidentiality Order and prohibited Husband from disclosing that document; 
3: Decision and Order After Financial Trial, dated September 15, 2022, in which the Court, inter alia, resolved equitable distribution, child support, and attorney's fees, and directed the parties "to comply [with] the express terms of the March 15, 2019 Confidentiality Order";
4: Judgment of Divorce, entered on January 9, 2023, which, inter alia, ordered the parties "to comply with the express terms of" the March 2019 Confidentiality Order;[FN2]
5: Order, dated April 1, 2022, which directed the parties to communicate via OFW or through a neutral intermediary ("the Communication Order");
6: Order, dated November 6, 2023, which designated Bettina Thomsen, LCSW as the neutral intermediary and directed Husband to pay 100% of Ms. Thomsen's fees;
7: Order to Show Cause, signed by the Court on November 6, 2023, which, inter alia, appointed a neutral psychiatric/forensic evaluator to perform "an expedited evaluation of the children's present psychological and emotional functioning and well-being, and the impact upon them of the present custodial schedule";
8: Order, dated November 8, 2023, appointing an AFC and directing Husband to pay the [*4]AFC's fees;
9: Order, dated November 14, 2023, appointing Dr. William Kaplan as the neutral evaluator in accordance with the November 6, 2023 Order to Show Cause, and directing the parties to equally share in the cost of Dr. Kaplan's fees 50/50;[FN3]
10: Interim Decision and Order on Contempt Cross-Motion, dated February 5, 2024 ("the Interim Contempt Order"), in which, inter alia, the Court found Husband to be in civil contempt and scheduled a hearing on the issue of Husband's criminal contempt on February 29, 2024, assigned him an 18B attorney to represent him at the hearing, and notified him that his failure to appear at the hearing would result in a warrant being issued for his arrest;
11: Article entitled "Lies, and money, and a history of (no) violence! Oh my!," published on substack.com on June 16, 2022, disclosing Wife's information and documents covered by the March 2019 Confidentiality Order;
12: Husband's letter dated, October 24, 2023, sent to Attorney General Leticia James and District Attorney Alvin Bragg, to which is attached the Silvestri Report;
13: Decision and Order, dated May 14, 2024, which, inter alia, granted the motion of Jonathan A. Nelson, Esq., the first 18B attorney appointed to represent Husband at the criminal contempt hearing, to be relieved as Husband's attorney, and rescheduled the criminal contempt hearing for July 8, 2024 at 2:30 p.m. The Court advised Husband that, when he appears for the criminal contempt hearing "whether in the custody of the Sheriff or voluntarily on July 8, 2024 — he has the right to and should be represented by an attorney of his choosing, the Court will not appoint another 18B attorney for him, and proper inquiry will be made at the commencement of the hearing." The Court also advised Husband that his failure to appear at the July 8, 2024 hearing will result in a warrant being issued for his arrest;
15: Statement of Financial Affairs for Individuals Filing for Bankruptcy, dated 02/08/2024, and filed by Husband in his bankruptcy proceeding (In Re: T.G.N., US Bankruptcy Court, Southern District of New York, Case Number 24-10092); and
16: Husband's email, dated October 24, 2024, sent to Goldman Sachs executives to which is attached the Silvestri Report.
Wife also offered her testimony and the Court finds her to be highly credible. Wife testified clearly and consistently that the Silvestri Report is a confidential document within the protection of the Confidentiality Orders, that Husband disclosed the Silvestri Report in June of 2022 and again in October of 2023, and the recipients of the Silvestri Report, including a reporter, government officials, and Goldman Sachs executives, are not "permitted parties" entitled to receive confidential documents. She identified Husband's signature on the financial statement that he filed in his bankruptcy proceeding, which she received as a party in that proceeding. She testified that she complied with all of her obligations under the Custody Professionals Fee Orders and that Husband did not, and that his bankruptcy filings show that he had income in 2023 amounting to over $575,000. Wife's testimony is amply supported by the [*5]other proof in the record.

 WIFE ESTABLISHED, BEYOND A REASONABLE DOUBT, THAT 
 HUSBAND IS IN CRIMINAL CONTEMPT OF THE SUBJECT COURT ORDERS
There is no view of this record that could lead to any conclusion other than that Husband has willfully — indeed, brazenly and serially — disobeyed court orders, mandating a finding of criminal contempt under Judiciary Law § 750 (3). To not find criminal contempt on this record would be to permit Husband to flout the legal process and make a mockery of the court and its lawful orders, which is the precise offense that Judiciary Law § 750 (3) is meant to punish (see Dep't of Env't Prot. of City of New York v Dept of Env't Conservation of State of NY, 70 NY2d 233, 239 [1987] [criminal contempt under Judiciary Law § 750 "involves an offense against judicial authority and is utilized to protect the integrity of the judicial process and to compel respect for its mandates"]; El-Dehdan v El-Dehdan, 114 AD3d 4, 11 [2d Dept 2013] [purpose of criminal contempt proceeding "is solely to punish the contemnor for disobeying a court order" and "aims to vindicate the authority of the court"]; Rubackin v Rubackin, 62 AD3d 11, 15 [2d Dept 2009] [criminal contempt "vindicate[es] the authority of the court, protect[s] the integrity of the judicial process, or compel[s] respect for the court's mandates"]).
A finding of criminal contempt will be sustained where it is established that: "a lawful order of the court clearly expressing an unequivocal mandate was in effect"; the alleged contemnor "had knowledge of the court's order"; and "it must also appear with reasonable certainty that the order has been disobeyed" (Dep't of Env't Prot. of City of New York, 70 NY2d at 240). In addition, the disobedience must be shown to be "willful" (Rubackin, 62 AD3d at 15; El-Dehdan, 114 AD3d at 15-16 ["'willful' in the criminal contempt statute, Judiciary Law § 750(A)(3), is best defined as 'intentional.'"]).
As noted in the Interim Contempt Decision, each of the subject Orders are lawful court orders expressing unequivocal mandates and have been in full force and effect; Husband had knowledge of each of the Orders; and Husband disobeyed each of the Orders (Dep't of Env't Prot. of City of New York, 70 NY2d at 240). None of the subject Orders — the Confidentiality Orders, the Communication Order, and the Custody Professionals Fee Orders — have been reversed or modified by the Appellate Division, First Department and remain the law of the case (see generally People v Evans, 94 NY2d 499, 502 [2000] ["law of the case has been aptly characterized as 'a kind of intra-action res judicata'"]). Although Husband appealed the Custody Professionals Fee Orders he did not obtain a stay of those Orders from the Appellate Division. He did not take an appeal from the Communication Order, the Interim Contempt Order, or any other Orders issued after February 2024 and did not obtain from the First Department a stay of the criminal contempt hearing.
In addition, the record at the criminal contempt hearing established, beyond a reasonable doubt, that Husband's abject refusal to comply with the Orders was willful and without excuse or justification and, thus, constitutes criminal contempt under Judiciary Law § 750 (3) (McCormick v Axelrod, 59 NY2d 574, 583 [1983] ["the element which serves to elevate a contempt from civil to criminal is the level of willfulness with which the conduct is carried out"]; Gomes v Gomes, 106 AD3d 868, 869 [2d Dept 2013] ["Knowingly failing to comply with a court order gives rise to an inference of willfulness which may be rebutted with evidence of good cause for noncompliance"]).
The Court issued four separate clear and unequivocal mandates in which it prohibited Husband from disclosing Wife's confidential information and documents to the public. The [*6]Court reiterated, three times, its direction that Husband comply with the "express terms" of the March 2019 Confidentiality Order, and its specific injunction restraining him from disclosing the Silvestri Report to the public or any persons outside the ambit of the March 2019 Confidentiality Order.
Nevertheless, in a bold flouting of the Court's Orders, Husband disclosed the Silvestri Report on no less than three occasions: to a reporter in or about June of 2022; to Attorney General Leticia James and District Attorney Alvin Bragg on October 24, 2023; and to Goldman Sachs' General Counsel and Global Head of Human Capital Management also on October 24, 2023. "This conduct evidences a lack of 'respect for judicial orders'" and warrants holding Husband in criminal contempt (Madigan v Berkeley Cap., LLC, 205 AD3d 900, 907 [2d Dept 2022]). Indeed, Husband's conduct is similar to the contemptuous conduct in Madigan, wherein the trial court's order plainly and clearly restrained and enjoined plaintiff from "issuing subpoenas, restraining notices, executions or other enforcement papers" in the case, but
Notwithstanding clear prohibition, the plaintiff's counsel issued subpoenas on six separate occasions. When, in connection with the motion of Oceana and Rosa for certain relief, the Supreme Court reiterated the terms of the stay, both via interim relief granted in the order to show cause and in a separate order, the plaintiff's counsel did not desist but instead served four more subpoenas and moved to compel the production of subpoenaed documents. This conduct evidences a lack of "respect for judicial orders" and warranted holding the plaintiff's counsel in criminal contempt (Matter of Department of Envtl. Protection of City of NY v Department of Envtl. Conservation of State of NY, 70 NY2d at 240, 519 NYS2d 539, 513 NE2d 706).
(Madigan, 205 AD3d at 906-907; see also, People, ex rel. Spitzer v Hooks, 64 AD3d 1075, 1077 [3d Dept 2009] [criminal contempt established beyond a reasonable doubt where, despite "clear mandates of Supreme Court," respondent "repeatedly violated" injunctions against him]; Soho All. v World Farm Inc., 300 AD2d 22 [1st Dept 2002] ["Despite the clear and unequivocal mandate of the court, of which it was aware, defendant continued to operate its business as if the injunction did not exist. Its actions can be interpreted in no other way than as willful and thus support the finding of criminal contempt."]).
In the same willful fashion, Husband disobeyed the Communication Order, pursuant to which Wife paid for an OFW account that she uses to attempt to communicate with Husband, as he vehemently and consistently refuses to speak to, and thus co-parent with, Wife except through her attorneys. The record also establishes beyond a reasonable doubt that Husband willfully refused to comply with the Custody Professionals Fee Orders at a time when he had ample funds to do so. By his own admission in the bankruptcy proceeding, Husband's total income in 2023 amounted to $575,000, which far exceeded his court-ordered share of the professional fees. Indeed, Husband paid one of his attorneys over $40,000 in November 2023 and Wife over $20,000 in January 2024. Under these circumstances, it is beyond a reasonable doubt that Husband's disobedience of the Communications Order and the Custody Professionals Fee Orders was knowing, intentional, and "can be interpreted in no other way than as willful and thus support the finding of criminal contempt" (Soho All., 300 AD2d at 22; Gomes, 106 AD3d at 869).
While prejudice to a party need not be established on a criminal contempt hearing (see Madigan, 205 AD3d at 905—06 ["because the purpose of criminal contempt is to vindicate the authority of the court, no showing of prejudice is required"]), it is critical to note that each of the [*7]subject Orders were issued to protect Wife and the children. Throughout the marriage, Wife was the primary, if not sole, wage earner and remains almost exclusively financially responsible for the children (Husband pays $646.46 per month in basic child support for his three children). Nevertheless, post-commencement, Husband engaged in a vicious campaign to ruin Wife's professional reputation and career, which would have the effect of undermining her ability to provide for the children. The Confidentiality Orders, prohibiting Husband from disclosing Wife's confidential documents, were issued precisely to put an end to Husband's harassing conduct and its potential harmful impact on Wife's income. Despite the Orders, Husband's campaign continues unabated; he is singularly focused on hurting his wife. The Communication Order and Custody Professionals Fee Orders were issued to facilitate communication between the parties so that they could co-parent, and to assist the Court in determining the custodial arrangement in the best of the children. Husband refused to comply with those Orders as well. It is clear that he cares little for his family and has manifested his disdain by willful disobedience of the Court's Orders.
Rather than appear at the criminal contempt hearing with either Mr. Sipsas, his retained counsel, or another attorney of his own choosing, or one of the two 18B attorneys the Court appointed for him, where some defense, if it existed, could be offered, Husband indicated — by words and actions — his clear intent not to appear in court. He has continued to defy the Court on each and every one of its lawful Orders. He evaded the Sheriff's various attempts to execute the warrants for his arrest to be delivered to court for the hearing. At the same time, he has filed a handful of frivolous motions, challenging the Court's authority upon grounds that utterly lack merit. He purports to manage the Court's calendar and procedures by making his proposed motions returnable in the virtual part and waiving oral argument.
If a court failed to find criminal contempt on this record, it would effectively undermine its own integrity and dignity and permit Husband to continue to disrespect judicial orders with impunity (Dep't of Env't Prot. of City of New York, 70 NY2d at 239 [criminal contempt "involves an offense against judicial authority and is utilized to protect the integrity of the judicial process and to compel respect for its mandates"]; Skripek v Skripek, 239 AD2d 488, 489 [2d Dept 1997] [order finding defendant in criminal contempt and imposing 30 day sentence of imprisonment affirmed; order "clearly served to punish the defendant for disregarding a prior order of the court" and the order finding criminal contempt "was issued to protect the dignity and the power of the court to regulate proceedings before it"]).
Husband's conduct is shocking and cannot be left to stand without redress. At every step, the Court gave Husband due process and fair hearing. Husband was given ample time to oppose the contempt cross-motion in writing and in person and, in fact, he had a retained attorney — Mr. Sipsas — whose work covered matters raised in the contempt cross-motion. Notwithstanding, he failed to submit written opposition to the cross-motion by January 12, 2024 and failed to appear in defense of it on January 24, 2024. The entire record in this matter establishes, without a shadow of a doubt, that even in his capacity as a self-represented litigant, Husband could have opposed the contempt cross-motion in writing. Between the end of November 2023 and August 5, 2024, Husband submitted nine separate proposed orders to show cause with supporting affidavits and exhibits (see NYSCEF Doc. Nos. 848, 871, 902, 939, 976, 980, 993, 998, and 1001).
Husband was afforded every protection owed to a defendant in a criminal contempt proceeding (New York City Transit Auth. v Transp. Workers Union of Am., AFL-CIO, 35 AD3d [*8]73, 86 [2d Dept 2006] [in criminal contempt proceedings "greater procedural protections apply, such as, among other things, the right to have the contempt proved beyond a reasonable doubt, and the right to the assistance of counsel"]; see also McCarthy v Ciano, 50 Misc 3d 861, 864 [Sup Ct, Putnam County 2015] [contempt application under Judiciary Law "is a criminal proceeding"; "The overlap in the language and requirements of Judiciary Law § 750(A)(3) and (A)(4) and Penal Law § 215.50(3) (criminal contempt in the second degree), support this determination."]). From the outset, the Court protected Husband's right to the assistance of counsel. On December 20, 2023, he was advised in open court, on-the-record, of his right to have an attorney of his own choosing on the contempt issues; indeed, the Court noted that Mr. Sipsas was still listed as his attorney in NYSCEF (see Interim Order, dated December 27, 2023, NYSCEF Doc. No. 898: "So you can hire whomever you want, I strongly suggest that you have an attorney in this case. What I am explaining to you now is either [Mr. Sipsas] is in, all the way in, or he is not. And so, in this moment, I have him as an attorney for you and I don't have a consent to change attorney. So this is a conversation that you must have with your attorney. . . which is he is either all the way in or he's not. Okay?").
Husband never confirmed whether Mr. Sipsas still represented him in any capacity. Ostensibly, however, Mr. Sipsas' representation continued as Husband supported his motion for $100,000 in interim attorney's fees with Mr. Sipsas' legal bills. Husband also did not file a consent to change attorney or other notice ending Mr. Sipsas' representation. As noted, Mr. Sipsas' retainer included work related to the injunction prohibiting Husband from disclosing Wife's confidential documents under the March 2019 Confidentiality Order — one of the very issues for which he now faces criminal contempt. Rather, Husband proceeded as a self-proclaimed self-represented litigant alleging an inability to pay for his own attorney.
Indeed, it was based on his purported "self-represented" status and purported claim of indigency, that the Court appointed Husband two separate 18B attorneys to represent him. In characteristic fashion, Husband violently rejected Mr. Nelson, the first appointed attorney, refused to cooperate with Mr. Nelson and ultimately sought his disqualification, accusing him and the Court of misconduct. The second appointed attorney, David Turchin, Esq., was present in court on July 18, 2024 for the entire criminal contempt hearing, and ready to be assigned if Husband showed up for the hearing. He did not show up.
The Interim Contempt Order, and each of the subsequent Orders which rescheduled the criminal contempt hearing — from February 29, 2024 to July 8, 2024 and then to July 18, 2024 — provided the requisite notices, in bold, all capital letters, twelve-point type of the date and time of the hearing. The Court advised Husband of his right to be represented by an attorney of his choosing and that it would appoint an 18B attorney to represent him upon "proper inquiry." The Court notified Husband in each of the orders scheduling the criminal contempt hearing, that his failure to appear at the hearing would result in a warrant being issued for his arrest. In its July 8, 2024 Order, the Court also issued the requisite Parker warnings (People v Parker, 57 NY2d 136 [1982]), advising Husband should he
. . .fail to appear on July 18, 2024, his absence will not prevent the criminal contempt hearing from proceeding, nor will it prevent the imposition of an appropriate sentence, should criminal contempt be established (People v Dilone, 225 AD3d 409 [1st Dept 2024]). Should Husband absent himself from proceedings on July 18, 2024, such absence will constitute a knowing, voluntary, and intelligent relinquishment of his right to be present at trial, and the contempt hearing and any sentencing (of no less [*9]than 30 days) will occur in his absence.
Despite all of the requisite notices; the clear admonitions that he had the right to, and should be, represented by an attorney of his own choosing (which by all indications was Mr. Sipsas); and the appointment of 18B counsel by the Court (notwithstanding the absence of a showing of indigency), Husband failed to appear at the July 18, 2024 criminal contempt hearing. Under these circumstances, and having provided the Parker warnings on July 8, 2024, the Court providently exercised its discretion and proceeded with the hearing in Husband's absence (People v Dilone, 225 AD3d 409 [1st Dept 2024]).
The Court held the criminal contempt hearing on July 18, 2024, during which it took evidence and testimony demonstrating, beyond a reasonable doubt, that Husband's actions constitute criminal contempt (New York City Transit Auth., 35 AD3d at 86; Rubackin, 62 AD3d at 15 [criminal contempt finding requires "proof beyond a reasonable doubt that the contemnor willfully failed to obey an order of the court"]). Had he been present at the criminal contempt hearing, which he knew was taking place on July 18, 2024 at 11:00 and at which an 18B attorney was present to defend him, he could have put on a defense.
To reiterate, Wife established, beyond a reasonable doubt, that Husband willfully disobeyed: (1) the Confidentiality Orders on three separate occasions by disclosing the Silvestri Report to a reporter in June of 2022, to Attorney General Leticia James and District Attorney Alvin Bragg on October 24, 2023, and to Goldman Sachs' General Counsel and Global Head of its Human Capital Management also on October 24, 2023; (2) the Communication Order by refusing to communicate with Wife through OFW or a neutral intermediary; and (3) the Custody Professionals Fee Orders by failing to pay the professional fees at a time when he had money to do so. Any one of Husband's acts of disobedience, standing alone and certainly in the aggregate, demonstrate, beyond a reasonable doubt, that Husband "willfully and openly flouted the authority of the court" (Town of Southampton v R.K.B. Realty, LLC, 91 AD3d 628, 630 [2d Dept 2012]).
Under Judiciary Law § 751 (1), punishment for criminal contempt under Judiciary Law § 750 "may be by fine, not exceeding one thousand dollars, or by imprisonment, not exceeding thirty days" (Judiciary Law § 751 [1]). The Court finds that Husband's three violations of the Confidentiality Orders amount to "multiple acts of disobedience" for which the Court imposes three separate 30 day sentences of imprisonment, and that his violation of the Communication Order and violation of the Custody Professionals Order each separately constituted a single act of disobedience (although continuing over time) (see Town of Southampton, 91 AD3d at 630), for which the Court imposes separate 30 day sentences of imprisonment (Judiciary Law § 751 [1]; Skripek, 239 AD2d at 489).
Consequently, Husband is guilty of five separate acts of willful disobedience of court Orders and is sentenced to a total of 150 days imprisonment (30 days x 5). A warrant of commitment and arrest to be issued simultaneously herewith and in accordance with this Decision and Order (see Judiciary Law § 770).
Accordingly, it is hereby
ORDERED that Wife's cross-motion, pursuant to Judiciary Law § 750 (3), for an order holding Husband in criminal contempt of the Confidentiality Orders, Communication Order, and Custody Professionals Fee Orders is granted; and it is further
ORDERED that Wife established, beyond a reasonable doubt, that the Confidentiality Orders, Communication Order, and Custody Professionals Fee Orders are lawful orders of the [*10]court expressing unequivocal mandates which have been and remain in full force and effect; that Husband had knowledge of each of the foregoing Orders; that Husband willfully disobeyed each of the foregoing Orders; and that his willful disobedience amounts to an offense against judicial authority and open and willful disrespect for the court's mandates; and it is further
ORDERED that Husband was provided with notice of the date and time of the criminal contempt hearing; an opportunity to appear with an attorney of his own choosing and present a defense at the criminal contempt hearing; that, should he fail to appear at the criminal contempt hearing on July 18, 2024, the Court would conduct the hearing, make any findings, and impose any sentence in his absence; and the Court provided Husband with an 18B attorney to represent him at the criminal contempt hearing; and it is further
ORDERED that Husband failed to appear at the criminal contempt hearing on July 18, 2024 and his failure to appear was not excused or justified; and it is further
ORDERED that Husband failed to present any competent evidence establishing a defense to or justification of his willful disobedience of the Confidentiality Orders, Communication Order, and Custody Professionals Fee Orders; and it is further
ORDERED that Husband is in criminal contempt, pursuant to Judiciary Law § 750 (3), for his willful disobedience of the Confidentiality Orders, Communication Order, and Custody Professionals Fee Orders; and it is further
ORDERED that Husband is guilty of three separate acts of willful disobedience of the Confidentiality Orders, one act of willful disobedience of the Communication Order, and one act of willful disobedience of the Custody Professionals Fee Orders, and is sentenced to a 30 day term of imprisonment for each of the five separate acts of willful disobedience, for a total sentence of 150 day term of imprisonment; and it is further
ORDERED that, pursuant to separate Order of Commitment and Warrant for Arrest, issued simultaneously herewith, Husband shall be committed to the custody of the Sherriff of New York County for delivery to the New York City Department of Corrections to be held for a maximum term of ONE-HUNDRED FIFTY (150) days commencing from the date he is arrested, unless sooner discharged according to law or by further order of the Court.
DATE: August 7, 2024
KATHLEEN WATERMAN-MARSHALL, JSC

Footnotes

Footnote 1:In October 2021, Husband engaged Ionas Sipsas, Esq. as a limited scope attorney in the underlying divorce action. The initial retainer agreement between Husband and Mr. Sipsas (NYSCEF Doc. No. 238) shows that Husband hired Mr. Sipsas to "prosecute/defend motion seq.#10," which was Wife's request for an injunction prohibiting Husband from disclosing documents and information protected by the March 2019 Confidentiality Order. Husband expanded Mr. Sipsas' retainer throughout the litigation. However, when convenient, Husband would claim that Mr. Sipsas was not his attorney, even on matters for which the limited scope retainers applied. To date, Mr. Sipsas has not filed a Consent to Change Attorney, or other notice stating that he no longer represents Husband in this matter for any purpose.

Footnote 2:The March 2019 Confidentiality Order; August 23, 2022 Decision and Order; September 15, 2022 Decision After Financial Trial; and JOD, are collectively referred to herein as "the Confidentiality Orders."

Footnote 3:The November 6, 2023 Order; November 6, 2023 Order to Show Cause; November 8, 2023 Order; and November 14, 2023 Order, are collectively referred to herein as the "Custody Professionals Fee Orders."